NO. 07-04-0524-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 8, 2006
_____

RAJ PARTNERS, LTD. AND SHAMBU ENTERPRISES CORP., APPELLANTS

V.

DARCO CONSTRUCTION CORP., APPELLEE
_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-522,182; HONORABLE BLAIR CHERRY, JR., JUDGE
_____

Before QUINN, C.J., and CAMPBELL, J.[1]

**OPINION**

Appellants RAJ Partners, LTD and Shambu Enterprises Corp. (collectively referred to as "RAJ") appeal the judgment in favor of appellee Darco Construction Corporation. Darco also appeals the judgment of the trial court. We will modify the trial court's judgment and affirm it as modified.

_____

[1] Don H. Reavis, Justice (Ret.), was on the panel that heard oral argument. He did not participate in the decision. TEX. R. APP. P. 41.1(b).

Background

RAJ obtained a franchise to build a Holiday Inn Express hotel in Lubbock, Texas. RAJ then sought to enter into a contract with a general contractor for the purpose of constructing the hotel. After the first general contractor failed to complete more than a minimal amount of work, RAJ contacted Darco about the project. RAJ and Darco entered into a construction contract and, as construction proceeded, Darco submitted numbered pay applications to RAJ for payment. The first ten pay applications were paid. Pay applications 11 and 12, totaling $189,271.04, were not paid. RAJ alleged it withheld payment due to its belief Darco had failed to perform as required under the contract.

Darco filed and perfected its constitutional and statutory mechanic's liens in the amount of the unpaid pay applications. Darco filed this lawsuit[2] in May 2003 and the case was tried to the bench over a five-week period. The trial court entered findings of fact and conclusions of law and entered judgment in favor of Darco, awarding: (1) $189,271.04 for breach of contract, (2) prejudgment interest on the judgment amount of 18% per year from March 31, 2003 until the date of judgment, (3) $101,931.01 in attorney's fees, (4) $5,376.75 in court costs, and (5) foreclosure of Darco's constitutional and statutory mechanic's liens. The trial court offset the contract damage award to Darco by the sum of $10,235 awarded to RAJ for access panels and caulking construction defects or omissions that the court determined were not excused by RAJ's conduct.

---

[2] RAJ Partners, LTD, a limited partnership, and Shambu Enterprises Corp., its general partner, were the original defendants. Thakor (Tim) Bhakta, Shambu's president, later was added as a defendant.

2

RAJ's Appeal

We initially consider RAJ's appeal from the trial court's judgment. RAJ raises three issues in its brief on appeal. RAJ first argues Darco cannot recover under the doctrine of substantial performance. RAJ next contends Darco should not have been awarded its attorney's fees. Finally, RAJ challenges the award of prejudgment interest at 18% per year.

Substantial Performance

First, RAJ contends Darco, as general contractor, cannot recover against RAJ, as the owner, because Darco failed as a matter of law to prove that it substantially performed its construction contract, absent which it says no basis for recovery exists. In support of its contention, RAJ raises the following three arguments: (1) Darco's failure to introduce evidence of the cost of remedying the hotel's defective brickwork and obtain a finding on that cost precludes any recovery; (2) substantial performance is legally impossible because the brick reconstruction cost exceeds mere remediation; and (3) Darco's failure to meet the difference-in-value measure of damages defeats recovery.

Substantial performance is an equitable doctrine that allows breaching parties who have substantially completed their obligations to recover on a contract. *TA Operating Corp. v. Solar Applications Engineering, Inc.*, 191 S.W.3d 173, 179-80 (Tex.App.–San Antonio 2005, pet. filed); *Tips v. Hartland Developers, Inc.*, 961 S.W.2d 618, 623 (Tex.App.–San Antonio 1998, no pet.). The doctrine of substantial performance recognizes that the contractor has not completed construction and, therefore, is in breach

3

of the contract. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984). However, under the doctrine of substantial performance, the owner cannot use the contractor's failure to complete the work as an excuse for non-payment. *TA*, 191 S.W.3d at 179-80; *see also Atkinson v. Jackson Bros.*, 270 S.W. 848, 850 (Tex.Com.App. 1925, holding approved) (stating "a contractor who has in good faith substantially performed a building contract is permitted to sue under the contract, substantial performance being regarded as full performance, so far as a condition precedent to a right to recover thereunder is concerned").

The trial court in this case entered findings of fact and conclusions of law. All but a couple of the findings of fact concerning the parties' performance of their obligations under the contract were favorable to Darco. The court found that "DARCO substantially complied with the Defendants' plans by constructing the Holiday Inn Express® in Lubbock, Texas under the terms and conditions set forth within the contract."[3] The court found also

---

[3] The construction contract defines "substantial completion" as follows:

[A]ll systems and construction included in the Work are completed and operational as designed, all designated or required governmental inspections and certifications have been made and posted, any designated instruction of Owner's personnel in the operation of systems has been completed, and all final finishes within the Contract Documents are in place. In general, the only remaining Work shall be minor in nature, so that the Owner could occupy the building on that date and the completion of the Work by the Contractor would not materially interfere or hamper the Owner's normal business operations. As a further condition of Substantial Completion acceptance, the Contractor shall certify that all remaining Work, the same being solely of a "punch list" nature, will be completed within thirty (30) consecutive calendar days.

4

that RAJ occupied the rooms[4] and the entire hotel and opened it for business before final completion of construction.[5] One finding, however, states that the hotel's brick veneer "was not installed in a good and workmanlike manner as required by the contract."[6] The finding goes on to say that the "defects in the brick construction are 'aesthetic' and not structural."

Seizing on the first part of the finding, RAJ contends Darco's failure to introduce evidence and obtain a finding on the cost to remedy the defects in the brickwork precludes recovery on a substantial performance theory. RAJ relies on the precept that, under the equitable doctrine of substantial performance, the recovery on the contract of a contractor who has not perfectly performed "is decreased by the cost of remedying those defects for which he is responsible." *Vance*, 677 S.W.2d at 482; *Atkinson*, 270 S.W. at 851. RAJ cites also the holding in *Vance* that "when a contractor seeks recovery on a substantial performance theory he has the burden to prove the reasonable cost of remedying the defects." 677 S.W.2d at 482; *see also BPR Constr. & Engineering, Inc. v. Rivers*, 608

---

[4] Article 11 of the contract provides:

Installation as Acceptance. Installation by the Owner of Owner Provided Aspects prior to "punch list" items being completed by the Contractor constitutes acceptance by the Owner for these rooms and relieves the Contractor of any further construction responsibility for the rooms occupied, except for warranty performance work.

[5] It is undisputed that the City of Lubbock issued a certificate of occupancy for the hotel.

[6] Evidence demonstrates that some of the brickwork on the building is noticeably crooked and uneven. The joints between bricks do not line up vertically, giving a wave-like appearance to parts of the outside of the building. Brickwork on an outside corner of the building has a slight bulge and is described as out of plumb by two inches. Individual bricks in some places protrude slightly from the face of the wall.

5

S.W.2d 248, 250 (Tex.Civ.App.–Dallas 1980, writ ref'd n.r.e.). RAJ concludes that Darco cannot recover under a substantial performance theory in the absence of a finding of the amount to be deducted for remediation of the brickwork. We disagree.

RAJ's brief refers to the "undisputed need to tear down and reconstruct the brick work." If findings are subject to more than one reasonable construction, they should be given the meaning that supports the action of the court as expressed in the judgment. *Rodriguez v. Rodriguez,* 860 S.W.2d 414, 418 (Tex. 1993); *De Llano v. Moran*, 333 S.W.2d 359, 360 (Tex. 1960); *see also Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 385 (Tex. 1962) (if findings are susceptible of different constructions, they are construed, if possible, in harmony with the judgment and to support it). Construing the trial court's findings in that manner, we read the finding that the defects in the brickwork were "aesthetic" to indicate the brickwork, although not installed in a good and workmanlike manner, was not in need of remedy. The court's finding is thus analogous to the jury findings of "none" for the costs of completion and correction of the work in *Ambassador Dev. Corp. v. Valdez*, 791 S.W.2d 612, 615-17 (Tex.App.–Fort Worth 1990, no writ) (holding the jury's findings of "none" for costs of completion and correction are not in conflict with the jury's finding of substantial performance). *See also Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 364 (Tex.App.–Dallas 1993, writ denied) (jury's effective answer of "none" to the cost of remedying defects does not mean appellee did not meet its burden of proof on its substantial performance claim). Because the brickwork was not in need of remedy, Darco did not have the burden to prove the remedial cost.

6

RAJ next argues if the brick reconstruction cost exceeds mere remediation, substantial performance is legally impossible. Case law holds there is no substantial performance when "it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great." *Hutson v. Chambless*, 300 S.W.2d 943, 945 (Tex. 1957); *see also Atkinson*, 270 S.W. at 850 (substantial performance "permits only such omissions or deviation from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing"). Under the court's findings, the defects in the brickwork, being only "aesthetic" in nature, do not impair the structure as a whole, and do not render legally impossible the trial court finding that Darco substantially performed under the contract.

Finally, with regard to substantial performance, RAJ contends Darco's failure to meet the difference-in-value measure of damages also defeats recovery. The difference-in-value measure is applicable where there has not been substantial performance. *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W.2d 715, 717 (Tex.App.–San Antonio 1985, writ denied). Darco substantially performed under the contract. We overrule RAJ's first issue on appeal.

Attorney's Fees

RAJ's second issue on appeal challenges the award of attorney's fees to Darco. It argues Darco failed to prove the reasonableness of the fees awarded.

7

The trial court's findings of fact include the finding that "Darco incurred attorney fees of $101,931.01 to prosecute its lawsuit attributable to the breach of contract and mechanic's lien claims." That is the amount awarded in the judgment. Testimony at trial by Darco's attorney's fees expert indicated that Darco's agreement with its attorney called for Darco to pay him a contingent fee of 30 percent for work on the tort claims Darco pursued at trial,[7] and a fee calculated at $350 an hour for his work on the "non-tort" claims. In his testimony, the expert addressed the factors bearing on the reasonableness of a fee for services in the case, and opined that the $350 hourly rate for Darco's counsel's services in the construction contract litigation was reasonable. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (discussing factors affecting reasonableness of attorney's fee).

RAJ's specific contention focuses on the evidence of the amount of time Darco's counsel had devoted to work on the "non-tort," i.e., breach of contract and lien, claims. Citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991) and following cases, RAJ contends Darco's evidence does not segregate fees incurred in pursuit of the contract and lien claims, for which RAJ concedes attorney's fees may be awarded, from those incurred in prosecution of the tort claims. It argues evidence of the number of hours spent by counsel in pursuit of those claims is factually insufficient. We disagree. On the last day of trial, under questioning by its counsel, Darco's secretary/treasurer Regetta Smith testified as follows:

---

[7] As will be discussed more fully later in this opinion, in addition to its breach of contract and lien foreclosure claims, Darco asserted tort claims including fraud and intentional interference with a prospective business relationship.

Q: As we are here today, do you know the total number of hours that you are obligated to pay for my attorney's fees in this case?

A: I figured them up this morning, and through 12:00 today, it would be 381 hours.

Viewed in light of the testimony describing Darco's fee agreement with its attorney, it is apparent Mrs. Smith was referring to the hourly rate component of the fee, that being charged for services related to the breach of contract and lien claims. At the hourly rate, 381 hours of work would call for a fee of $133,350. As noted, the court awarded $101,931.01. Considering all the evidence, the trial court's finding and resulting attorney's fee award was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (setting out standard for review of factual sufficiency of evidence). RAJ's second issue is overruled.

## Prejudgment Interest

Darco's entitlement to the 18% per year prejudgment interest included in the trial court's judgment depends on the applicability of Chapter 28 of the Texas Property Code, which requires prompt payment of contractors and subcontractors.[8] TEX. PROP. CODE ANN. § 28.001, *et seq.* (Vernon 2000). In its third issue on appeal, RAJ contends Darco cannot recover the 1.5% per month prejudgment interest provided under section 28.004 because

---

[8] The construction contract provided for interest on past due payments of 1% per month.

a good faith dispute existed on the amount due under Darco's pay applications 11 and 12. RAJ argues under section 28.003(b), "there could be no overdue payment because a good faith dispute existed 'concerning the amount owed' and 'whether the work was performed in a proper manner.'" *See* TEX. PROP. CODE ANN. § 28.003(b) (permitting owner to withhold amounts subject to good faith dispute). A good faith dispute includes a dispute regarding whether the work was performed in a proper manner. *Id.*

The parties disagree which of them had the burden at trial of proving the existence *vel non* of a good faith dispute. RAJ argues Darco bore that burden under its theory of recovery in this case. Darco contends the burden of proving the existence of a good faith dispute lies with the party withholding payment. We need not resolve that disagreement because the outcome here does not depend on the allocation of the burden of proof.

The trial court heard extensive testimony and admitted correspondence between Darco and RAJ evidencing the dissension between RAJ's representative Tim Bhakta and Darco personnel during construction. The trial court's findings of fact include the unchallenged findings that "RAJ, owner of the hotel, acting through its agent, Bhakta, egregiously interfered with the performance of the contract by DARCO," and "Tim Bhakta's invasions and interference caused the project to be more expensive, the scope of work more burdensome, [and] the project delayed, and disrupted DARCO's performance of its contract and quality of performance by its subcontractors."

The court also found that the project was substantially completed on or about November 25, 2002, and that Darco submitted its pay applications 11 and 12 on or about

10

February 18, 2003.  Its findings further include the statements that "[p]ursuant to the contract DARCO executed several punch lists before its construction supervisor was ordered off the property by Defendants, at which time neither DARCO nor its subcontractors could determine, inspect, investigate and perform warranty work on the hotel," and that "after DARCO had completed construction and turned the hotel over to RAJ, Bhakta and RAJ created new 'punch list' items as an excuse for not paying for DARCO's substantial performance of the contract."

Assuming, without deciding, that Darco bore the burden of demonstrating that no good faith dispute existed regarding its entitlement to payment for its pay applications 11 and 12, we find that, considering all the evidence, the trial court's apparent conclusion it met that burden is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Rodriguez*, 860 S.W.2d at 418; *Cain*, 709 S.W.2d at 176.  We overrule RAJ's third issue.

Darco's Appeal

At trial, Darco sought additional consequential damages against RAJ for breach of contract, which the trial court did not award.  And, as noted, Darco asserted causes of action against RAJ for intentional interference with prospective business relations and for fraud.  The trial court denied it recovery on those causes of action as well.  In addition, the trial court's judgment made no provision for post-judgment interest.  Raising six issues, Darco's appeal of the judgment challenges the trial court's failure to award it the additional consequential damages it sought (issues two and three); failure to award it damages for

11

intentional interference with prospective business relations (issue four) and for fraud (issue five); and failure to award it post-judgment interest (issue six). Darco's first issue contends the trial court erred in failing to make the findings of fact Darco requested.

Consequential Damages

We begin with Darco's second and third issues on appeal. Darco contends the trial court erred by not awarding it additional consequential breach of contract damages because, Darco argues, it proved its entitlement to the damages as a matter of law. Darco accordingly seeks rendition of judgment for the claimed amounts. Darco's argument focuses on two areas in which it claims it suffered consequential damages: (1) delay damages and (2) other foreseeable damages. Consequential damages result naturally, but not necessarily, from a defendant's wrongful acts. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995). Consequential damages must be foreseeable and directly traceable to the wrongful act and result from it. *Arthur Andersen*, 945 S.W.2d at 816.

As Darco correctly notes, we review a trial court's fact findings under the same legal and factual sufficiency standards applicable to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). An appellant attacking the legal sufficiency of evidence supporting an adverse finding on which it had the burden of proof must show on appeal that a contrary finding was established as a matter of law. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Darco's matter of law contention first requires examination of the record for evidence supporting the court's finding, ignoring all evidence to the contrary.

12

If no evidence appears to support the finding, we must then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.–Amarillo 1988, writ denied). In this context, a proposition has been established as a matter of law when a reasonable finder of fact could draw only one conclusion from the evidence presented. *See generally City of Keller v. Wilson*, 168 S.W.3d 802, 814-16 (Tex. 2005). Here, the "contrary proposition" Darco must establish encompasses both its entitlement to the consequential damages it sought at trial and the amount of those damages. *See Ponce v. Sandoval*, 68 S.W.3d 799, 809 (Tex.App.–Amarillo 2001, no pet.) (tort damages); *see also Manfredi v. Lubbock Hometel Development Venture*, 2000 WL 1639305 *5 (Tex.App.–Amarillo Nov. 1, 2000, no pet) (citing *Martin v. Warrent Miller Co.*, 639 S.W.2d 706, 707 (Tex.App.–Tyler 1982, no writ)) (in the event of a reversal and rendition, an appellate court cannot supply the amount of appellant's damages).

RAJ does not point to evidence supporting the trial court's finding. It contends, though, the evidence does not establish as a matter of law that Darco sustained the claimed consequential damages. We agree with RAJ.

Darco claims the evidence established RAJ's wrongful acts caused 91 days of construction delay, that Darco suffered damages of $18,200 for its construction superintendent's salary during that period, and that Darco was entitled, in addition to its

13

daily construction fee of $1000, to compensation for Darco president Dale Smith's "extra work" valued at $9687. The trial court's findings include the unchallenged finding that "RAJ was responsible by its conduct for substantial delays in the construction of the hotel." The court did not find that the RAJ-caused delays amounted to 91 days, however, and the record does not conclusively establish that they did so.

Darco's claim of 91 days of construction delay was supported by the testimony of its secretary/treasurer Regetta Smith. She testified that she calculated the 91-day figure by reviewing such items as reports from subcontractors and Darco's superintendent's reports. The record also contains an exhibit Mrs. Smith prepared that summarizes her testimony. The exhibit attributes 18 days of the 91-day delay to a change of construction superintendent made necessary by the resignation of Darco's original superintendent. The exhibit notes that the project "lost momentum" while the new superintendent was learning Darco's procedures and the subcontractors. Attached to the exhibit are copies of reports from the plumbing and electrical subcontractors, listing their lost time.

The trier of fact may choose to believe all, part, or none of the testimony of any particular witness. *In the Interest of R.D.S.*, 902 S.W.2d 714, 716 (Tex.App.–Amarillo 1995, no writ). The testimony of an interested witness like Mrs. Smith, even if uncontradicted, does no more than raise an issue of fact to be determined by the trier of fact unless that testimony is clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach the testimony. *McGalliard v. Kuhlman*, 722 S.W.2d 694, 697 (Tex. 1986). It is clear that Mrs. Smith's calculation of the 91-day period of delay required some interpretation on her part of the reports submitted by others. The

14

evidence presented did no more than raise an issue of fact for the trial court's resolution. Darco's claimed 91-day construction delay was not proven as a matter of law. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Rodriguez*, 860 S.W.2d at 418.

Darco also contends it established its entitlement to additional damages including $207,000 in "administrative expenses," $2,766.03 in interest expenses for loans it took out to maintain cash flow, $2,600 for attorney's fees it incurred while successfully defending a suit against a subcontractor, and monies due for unpaid change orders. Again, we disagree. Darco argues that it is entitled to the $207,000 administrative expenses to compensate it for hours of work Dale and Regetta Smith devoted to addressing the problems caused by RAJ's conduct, occupying what would otherwise have been productive time.[9] But the evidence does not show that Darco paid, or was obligated to pay, the Smiths the $207,000, or that the amount reflects any other measure of loss to Darco. Further, and like the claimed interest expense and attorney's fees, we do not find evidence conclusively establishing that the claimed damages were foreseeable, directly traceable to RAJ's wrongful acts and resulting from them. *Arthur Andersen*, 945 S.W.2d at 816. As to its claim for unpaid change orders, Darco neither directs us to a provision in the contract entitling it to such damages nor provides authority supporting the award of such an item as consequential damages. *Haynes & Boone*, 896 S.W.2d at 182. Having examined the entire record, we find the evidence does not establish Darco's entitlement to its claimed

---

[9] Darco's exhibit showing the calculation of the $207,000 attributes 1032 hours of Dale Smith's time at an hourly rate of $125 and 1560 hours of Regetta Smith's time at $50 per hour. The exhibit states that it reflects "administrative time necessary for work on law suit."

consequential damages as a matter of law. *Raw Hide*, 766 S.W.2d at 276. We overrule

Darco's issue two. Our discussion of issue two makes unnecessary our consideration of

Darco's issue three, by which Darco contended the construction contract did not contain

a "no damage for delay" provision.

## Interference With Prospective Business Relations

Darco next argues factually insufficient evidence supported the trial court's denial

of its claim for intentional interference with prospective business relations.[10] During

construction of the Holiday Inn Express, Darco was approached by a former customer

regarding the construction of a Days Inn hotel in Dumas, Texas. After negotiations, Darco

prepared a contract ready for signature, but the Dumas hotel owner ultimately decided to

use a different contractor. Darco alleges the Dumas hotel owner decided to use the other

contractor because of Tim Bhakta's derogatory comments about Darco.

---

[10] The elements of a claim for tortious interference with a prospective business relationship include:

(1) a reasonable probability that the parties would have entered into a contractual relationship;
(2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;
(3) the defendant did such act with a conscious desire to prevent the relationship from occurring or he knew that the interference was certain or substantially certain to occur as a result of his conduct; and
(4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Ash v. Hack Branch Distributing Co., Inc.*, 54 S.W.3d 401, 414-15 (Tex.App.–Waco 2001, pet. denied).

The trial court findings state that Darco and the Dumas hotel owner "engaged in serious negotiations resulting in a set of plans and specifications, costs estimates, and a proposed contract as well as affirmative statements made to others that DARCO would build said hotel." However, the district court concluded the evidence was factually insufficient to establish a claim of intentional interference with the prospective business relationship.

A party challenging on appeal the factual sufficiency of a finding on an issue on which that party had the burden of proof at trial must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Raw Hide*, 766 S.W.2d at 276. In considering such an appellate contention, the reviewing court must consider and weigh all the evidence and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242; *see Maritime*, 971 S.W.2d at 407 (court of appeals may set aside verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust). In our review, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Maritime*, 971 S.W.2d at 407.

Darco emphasizes the testimony of its construction superintendent Billy Scott, who testified that while the Dumas hotel owner was visiting the construction site in Lubbock, Scott overheard Tim Bhakta say in the owner's presence that Darco was "screwing him,

ripping him off," Darco was "making money off the subs, making money of [*sic*] the vendors . . . . doing crappy work," and he was going to sue Darco. Scott said Tim Bhakta made similar statements about Darco to others in the "Indian community" as well as representatives of the City of Lubbock. Scott also testified that he later had a conversation with the Dumas hotel owner when he visited the Lubbock inn shortly before it was completed. When, during that conversation, he asked the Dumas hotel owner what happened to cause Darco to lose the Days Inn project, Scott said the owner responded, "[t]he problems with Tim [Bhakta]."

Other testimony supports the trial court's rejection of Darco's intentional interference claim. Tim Bhakta testified that he "never talk[ed] bad stuff" about Darco and instead he "already recommend[ed]" Darco. Roger Narsai, vice president of Shambu, testified the Dumas hotel owner's wife did not like Darco's work on previous construction projects and that is why Darco was not awarded the Days Inn hotel project.

The Dumas Days Inn owner did not testify. As finder of fact, the trial court was not required to give credence or weight to the testimony of the witnesses who provided evidence concerning the owner's possible reasons for selecting another contractor. *Maritime*, 971 S.W.2d at 407; *In the Interest of R.D.S.*, 902 S.W.2d at 716. Its failure to find that Darco's intentional interference claim was supported by the evidence was not against the great weight and preponderance of the evidence presented. *Ash*, 54 S.W.3d at 414-15; *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 683 (Tex.App.–Houston [14th Dist.] 1998, no pet.).

18

Fraud

Through its fifth issue, Darco contends the trial court's rejection of its fraud claim against RAJ was against the great weight and preponderance of the evidence. Darco argues the evidence established that RAJ fraudulently induced it to enter the construction contract by misrepresenting the quality and character of the plans and by concealing from Darco a letter from Holiday Inn specifying certain required architectural features.

The elements of fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001), citing *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Darco cites the trial court's findings of fact, which include the finding that RAJ made false representations to Darco regarding the adequacy of the plans and specifications and that "DARCO relied upon the project plans and Defendants' representations concerning the adequacy of the plans and specifications." As noted, we construe the trial court's findings in a manner that supports its judgment. *Rodriguez*, 860 S.W.2d at 418. Although the trial court found Darco relied on RAJ's misrepresentations about the plans, it did not find RAJ knew they were false at the time they were made, or made them recklessly without any knowledge of their truth. *FirstMerit Bank*, 52 S.W.3d at 758. In support of that

19

element, Darco points to the evidence that, because of the original contractor's failure to complete the job, RAJ was facing imminent deadlines from Holiday Inn and was over budget at the time it made its deal with Darco. Darco concludes it is "difficult to deny" that RAJ knew of its deception of Darco. We cannot agree a contrary conclusion is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242.

The trial court also found RAJ withheld the Holiday Inn letter from Darco until after the contract was signed. Again, however, the court did not find that Darco suffered injury because it did not see the letter until after the contract was signed. As RAJ points out, the primary feature discussed in that letter was that Holiday Inn required coffered ceilings in the hotel. The evidence shows that, despite the letter, Darco did not build coffered ceilings in the hotel.[11] The great weight and preponderance of the evidence does not demonstrate that withholding the letter caused injury to Darco. *Dow Chem.*, 46 S.W.3d at 242.

Additional Findings of Fact

Both Darco and RAJ timely filed requests for findings and conclusions, and the trial court entered findings of fact and conclusions of law. Darco and RAJ then timely requested additional findings and conclusions. The trial court denied both requests by a written order that stated the original findings and conclusions "decide all the material

---

[11] The record contains some evidence Holiday Inn at the time of trial still was asserting that the ceilings must be rebuilt in compliance with its specifications, but that eventual outcome is far from clear on this record.

20

disputed issues of fact and announce a basis on which the court has rendered judgment

. . . ."

Rule of Civil Procedure 298 requires the trial court to file, on request, additional findings and conclusions that are appropriate. The failure to make appropriate[12] additional findings of fact and conclusions of law after a timely request requires reversal unless the record affirmatively shows the complaining party has not suffered an injury, but if the record indicates the party did not suffer injury from the court's failure to make the requested additional findings, reversal is not required. *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex.App.–Austin 2004, pet. denied); *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 277 (Tex.App.–Houston [14th Dist.] 1999, pet. denied). In that regard, if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *Flanary*, 150 S.W.3d at 792, *citing ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex.App.–El Paso 1996, no writ).

Darco's requested additional findings and conclusions sought further information about the trial court's reasons for failing to award it recovery on its intentional interference and fraud claims. It asks that we abate the appeal and remand the cause, directing the trial court to enter findings and conclusions on the elements of those claims the court found wanting. *Johnston* involved a contention like that made by Darco here. Because the trial court did not rule on their requested amended findings and conclusions, the *Johnston* appellants argued they could not ascertain on what facts and grounds the trial court based

---

[12] *See Kirby v. Chapman,* 917 S.W.2d 902, 909 (Tex.App.–Fort Worth 1996, no writ) (listing limitations on trial court's duty to make additional findings).

21

its judgment denying their cause of action. 9 S.W.3d at 277. The court of appeals rejected the argument, finding no injury from the failure to file the findings, because, among other reasons, the appellants did not show the absence of the findings prevented their adequate presentation of their complaint on appeal. *Id*.

We find the holding applicable to Darco's contention. The trial court's original findings of fact and conclusions of law addressed Darco's intentional interference and fraud causes of action separately. Darco has presented appellate issues contending that the court's failure to sustain the causes of action was against the great weight and preponderance of the evidence, and the complete appellate record has permitted our review and disposition of those issues. Assuming Darco's requested additional findings and conclusions were appropriate, a question we do not address, we find Darco has suffered no injury from the trial court's failure to file them. *Flanary*, 150 S.W.3d at 792; *Johnston*, 9 S.W.3d at 277. Darco's first issue is overruled.

Postjudgment Interest

By its sixth issue, Darco contends the trial court erred in making no award of postjudgment interest when Darco was awarded money damages for breach of contract. Section 304.001 of the Texas Finance Code states a "money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." We agree with Darco that postjudgment interest is mandated by statute, and is recoverable even if the trial court's judgment does not mention it. *See Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex.App.–Houston [1st Dist.] 1996, writ denied) (discussing TEX. REV.

22

CIV. STAT. art. 5069-1.05, the predecessor statute of section 304.001); see also TEX. FIN. CODE ANN. § 304.003 (Vernon 2006) (providing postjudgment interest rates), § 304.005(a) (stating general rule for accrual of postjudgment interest on money judgment). Accordingly, we sustain Darco's sixth issue.

Having overruled RAJ's issues on appeal, and sustained only Darco's sixth issue, we modify the trial court's judgment to include an award of postjudgment interest at the Finance Code § 304.003 rate applicable to the judgment, and affirm the judgment as modified.

James T. Campbell
Justice