Opinion issued June 10, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00041-CV

———————————

R.B. Hardy and sons, inc., Appellant

V.

hoyer global
(usa), INc.,
Appellee



 



 

On Appeal from the 55th District Court

Harris County, Texas



Trial Court Case No. 2005-37554

 



 

MEMORANDUM OPINION

          Appellant,
R.B. Hardy and Sons, Inc. (“Hardy”), challenges the trial court’s judgment,
entered after a jury trial, in favor of appellee, Hoyer Global (USA), Inc.
(“Hoyer”), in Hoyer’s suit against Hardy for breach of contract and breach of
warranties.  In five issues, Hardy contends
that the evidence is legally and factually insufficient to support the jury’s
finding that Hardy failed to comply with an express warranty, the trial court erred
in submitting a question to the jury on whether Hardy had failed to perform
services in a good and workmanlike manner, the evidence is factually
insufficient to support the jury’s finding that Hardy’s conduct was not excused
by estoppel, the jury’s damage award is excessive, and the trial court erred in
“ignor[ing] Hardy’s counterclaim for breach of contract,” which entitled Hardy
to an offset.

          We
affirm.  

Background

          In its
petition, Hoyer alleged that it requested bids from various contractors,
including Hardy, to pave a piece of land it owned and on which it intended to
stack tank containers and park domestic tank trucks. Hoyer specified in its bid
request that the paving should be completed in three layers of certain
materials and depths.  Hardy submitted a
bid and revised bid, suggesting a change in the material to be used in the middle
layer.  Hoyer accepted Hardy’s revised
bid, and Hardy began work on the project in April 2004.   

          Hoyer
further alleged that, shortly after Hardy completed the project, Hoyer
“observed numerous failures” in the lot. 
Hoyer hired multiple firms to test and review the project, and these
firms issued reports confirming failures, including aggregate segregation in
the asphalt surface layer, failures of the base and subgrade layers, improper
mixing and installation, and inconsistency in depth of layers.  Hardy refused to undertake the remedies
suggested by one of these third-party firms. 


          Hoyer
complained that the estimated repair costs exceeded $650,000, the project would
have to be completely redone, it could not use the land for its intended
purpose, and it had lost multiple business opportunities.  Hoyer asserted claims for breach of contract
and breach of express and implied warranties.[1]

          Hardy
generally denied Hoyer’s allegations and asserted various affirmative defenses,
including estoppel, waiver, and substantial compliance.  Hardy also asserted a counterclaim, asserting
that it had fully performed the contract and that Hoyer still owed it
approximately $20,000 on the contract.

          After
trial, the jury found, in response to question number one, that Hardy had
failed to comply with its contract with Hoyer and, in response to question
number two, that Hardy had failed to comply with an express warranty and failed
to perform its services in a good and workmanlike manner.  Then, after finding that Hardy’s failures
were not excused by waiver or estoppel, the jury found that Hoyer had been
damaged in the amount of $271,343.35 for “remedial damages” and $18,000 for
lost profits arising from Hoyer’s loss of use of its adjoining land.  The jury further found, on Hardy’s
counterclaim, that Hoyer had not failed to comply with the contract.  The trial court entered judgment in
accordance with the jury’s verdict, awarding Hoyer damages in the amount of
$289,343.35, plus interest and attorney’s fees.

Warranties

In its first issue, Hardy argues
that the evidence is legally and factually insufficient to support the jury’s
finding that Hardy failed to comply with an express warranty because it “did
not make any representation to Hoyer regarding the quality or characteristics
of the services that became part of the basis of the bargain.”  In its second issue, Hardy argues that the
trial court improperly submitted a question asking if Hardy had failed to
perform services in a good and workmanlike manner because the economic loss
rule precluded any claim for an implied warranty.

The jury charge contained two
separate questions on Hardy’s liability: the first question asked the jury to
find whether Hardy had breached its contract with Hoyer and the second question
asked the jury to find whether Hardy had failed to comply with an express
warranty or failed to perform its services in a good and workmanlike manner.  The jury was then instructed to award damages
to Hoyer if it made an affirmative finding to either the breach of contract or
the warranty questions.  The jury answered
both liability questions affirmatively, finding that Hardy had breached the
contract, failed to comply with the express warranty, and failed to perform its
services in a good and workmanlike manner. 


          If an independent ground fully supports
the complained-of judgment, but an appellant assigns no error to that
independent ground, then we must accept the validity of the unchallenged
independent ground and, thus, any error in another ground challenged on appeal
is harmless.  Britton v. Tex. Dep’t of Criminal Justice, 95 S.W.3d 676, 682 (Tex.
App.—Houston [1st Dist.] 2002, no
pet.); Harris v. Gen. Motors Corp., 924
S.W.2d 187, 188 (Tex. App.—San Antonio
1996, writ denied).  The rule requiring
an appellant to attack all independent grounds supporting a judgment has been
applied in many contexts, including independent jury findings fully supporting
a trial court’s judgment.  See Britton,
95 S.W.3d at 682 (stating that “appellant must attack each independent jury
finding to obtain a reversal”).  Although
Hardy has challenged the sufficiency of the evidence to support the jury’s
finding that it had failed to comply with an express warranty, and although
Hardy has challenged the submission of the question on good and workmanlike
performance, it has not asserted any challenge to the jury’s separate
affirmative finding to the breach of contract question.  Because the jury answered both liability
questions affirmatively, and because the jury charge was structured to allow
the jury to award damages based upon an affirmative finding to either liability
question, the trial court’s judgment in favor of Hoyer can be upheld by the
jury’s liability findings on either
the breach of contract or warranty questions. 
Because Hardy does not challenge the jury’s affirmative finding on the
breach of contract question, which is an independent ground supporting Hardy’s
liability, Hoyer’s damages, and the trial court’s judgment, we hold that any
error in finding that Hardy breached its warranty or any error by the trial
court in submitting the implied warranty question is rendered harmless.   

We overrule Hardy’s first and
second issues.

Estoppel

In its third issue, Hardy argues
that the jury’s finding that its conduct was not excused by estoppel “was
against the overwhelming weight of the evidence and was manifestly unjust” because
it should not be held responsible for damages “caused or contributed by Hoyer’s
own conduct.”   Hardy asserts that Hoyer failed to inform it
of the intended use of the paved lot, Hoyer unilaterally modified the design
criteria for the lot contrary to expert recommendations by bidding out the
project and specifying only a two-inch asphalt surface layer rather than the
recommended three-inch asphalt surface layer, and Hardy knew nothing about the
“geo-technical specifications” for the lot.

When a party is challenging the
factual sufficiency of a finding on an issue upon which that party had the
burden of proof, that party must demonstrate that the adverse finding is
against the great weight and preponderance of the evidence.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  We must consider and weigh all of the evidence
and set aside a verdict only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust.  Id.  The jury is the sole
judge of the witnesses’ credibility and the weight to be given their testimony.
Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003).

Question 4 of the jury charge
asked,[2]

Was
[Hardy’s] failure to comply excused by estoppel?

 

Failure to comply by [Hardy]
is excused by estoppel if all the following circumstances occurred:

 

1.     Hoyer

 

a.     by words or conduct made a
false representation or concealed material facts;

 

b.     with knowledge of the facts
or with knowledge or information that would lead a reasonable person to
discover the facts; and

 

c.      with the intention that
[Hardy] would rely on the false representation or concealment in acting or
deciding not to act; and

 

2.     [Hardy]

 

a.     did not know and had no
means of knowing the real facts and

 

b.     relied to its detriment on
the false representations or concealment of material facts.

 

The jury answered “No” to this question, finding
that Hardy’s “failure to comply”[3] was not excused by the
affirmative defense of estoppel. 

In support of its factual
sufficiency challenge to the jury’s negative finding on the estoppel question,
Hardy emphasizes evidence showing that Hoyer modified the recommended design by
specifying a two-inch asphalt layer in its bid request rather than a three-inch
layer, which had been recommended by the firm that designed the lot.  Hardy also asserts that it had no “specific
knowledge concerning the use of the lot to be constructed.”  

John Hensley, an engineer with WCM,
which was the consulting firm retained by Hoyer to design the lot as a
mixed-use facility for container parking, tank truck parking, and employee
parking, testified that WCM designed the lot with a three-inch asphalt surface
layer, not the two-inch later ultimately bid and constructed.  However, Hensley further testified that he
could not testify as to the design limits of the asphalt structure.  Michael Gunn, WCM’s project manager, testified
that he did not recall Hoyer asking whether it could change the design, and he
stated that it would have been important for Hoyer to ask WCM about this
change.   Thus, as Hardy emphasizes, the jury was
presented with some evidence that Hoyer deviated from the original design when
it solicited bids on a lot with a two-inch asphalt layer.  

However, the jury was also presented
with conflicting evidence on whether Hardy was actually aware, or should have
been generally aware, of Hoyer’s intended use of the lot for heavy loads and
equipment and the storage of containers. 
Moreover, Hoyer presented evidence that the lot, within a short time after
its completion, suffered performance failures that were not attributable to
either Hoyer’s design deviation or Hoyer’s actual usage of the paved lot.  Hoyer’s witness, Dr. Bandy, testified that
shortly after the project’s completion, he observed that the aggregate of the
asphalt was not properly compacted and was “loose,” there was localized failure
attributable to load and water intrusion, and the asphalt lacked adequate
asphalt cement “even in areas where the pavement [had] not been subjected to
traffic.”  Bandy opined that the asphalt
was applied at too cold of a temperature. 
Bandy also reviewed testing data showing that the three layers required
by the design specifications that were ultimately used in the project were
constructed with inconsistent depths, resulting in paving failure.  Bandy stated that the construction was not
done properly, the layers should have been consistent, and the lot was made with
insufficient amounts of lime, which he opined further caused the paving
failures.  Bandy also stated that he had
never seen a pavement failure like the one in this case, which occurred “within
weeks of completion.”  Bandy believed
that the lot should have had a life of twenty years.  

On cross-examination, Bandy stated
that he did not believe traffic and load capacity contributed to the failures
of the paving structure because, when he went to inspect the lot within a few
weeks of construction, “the whole thing looked terrible.”  Bandy stated that, even despite the fact that
only two inches of asphalt were used, the traffic on the lot and the capacity
had nothing to do with the failures, at least not “immediately.”  Bandy also specifically testified that
installing three inches of asphalt on this project would not have made a
difference in the performance of the lot based on all the other problems with
the project.

In sum, the jury was presented with
sufficient evidence that would have allowed it to find that Hoyer did not make
false representations or conceal material facts or that Hardy relied to its
detriment on any false representations or concealment of material facts in
constructing the lot.  Accordingly, we
hold that the jury’s finding that Hardy’s failure to comply was not excused by estoppel
is not against the great weight and preponderance of the evidence.

We overrule Hardy’s third issue.

Damages

In its fourth issue, Hardy argues
that the jury’s award of remedial damages is excessive because Hoyer “should
only be able to recover damages for what it expected based upon the contract”
and “the proper measure of damage was the costs incurred” in repairing the
defects allegedly caused by Hardy.  Hardy
asserts that the jury based its damage award upon the quote for the cost of
repairs suggested by Hardy that went beyond the scope of the original
contractual specifications.  

We construe Hardy’s fourth issue to
present a challenge to the factual sufficiency of the jury’s award of damages
to Hoyer. See Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406 (Tex. 1998) (“The standard of review for an excessive damages
complaint is factual sufficiency of the evidence.”).  In
reviewing a factual-sufficiency challenge to a finding on an issue on which the
appellant did not have the burden of proof, we consider and weigh all of the
evidence supporting and contradicting the challenged finding and set aside the
finding only if the evidence is so weak as to make the finding clearly wrong
and manifestly unjust. Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

In question number four, the jury
was asked to award a sum of money that would compensate Hoyer for its damages,
and the jury was instructed to consider “remedial damages,”[4]  which were defined as “the reasonable and necessary cost to repair
the paving project, whether already incurred or to be incurred in the future.”[5]  The jury awarded $271,343.35 for these remedial damages. 


At trial, Hoyer presented evidence
on the estimated costs to permanently repair the lot in light of the failures
experienced.  One of Hoyer’s experts
testified that this cost would be $585,000. 
This expert explained that this reflected the cost to “grind up” the
existing lot, “stabilize the base again,” and replace the existing material
with “a cement added binder.”  Hoyer’s
expert further testified that this would be the least expensive method of
repair because it involved reusing materials. 


In response to Hoyer’s expert
testimony, Hardy emphasizes that there was also testimony presented at trial
that some repairs had already been made to the lot at a cost of approximately
$114,000.  Additionally, there was evidence
that the lot was capable of being used for its intended purpose after these
repairs.  However, there was also
conflicting testimony that these repairs were nothing more than “emergency
repairs” and that the entire lot still needed to be completely redone based
upon the failures that the lot had experienced. 
Hardy cross-examined Hoyer’s experts and vigorously challenged their
estimates at trial, but the jury was presented with evidence that $114,000 in
repair costs already expended would not be sufficient to cover the ultimate
repair costs and repair the existing failures in the lot.

The parties’ damages figures were
hotly contested.  In fact, in closing
arguments, Hoyer argued that, based upon its evidence, it believed it was
entitled to remedial damages in the range of $650,000 to $870,000 to permanently
repair the lot.  Hoyer also explained to
the jury that, in addition to these costs, it was already out of pocket
$114,000 for the temporary repairs that it had performed.  Hoyer suggested to the jury that the costs
for these previously performed repairs should be awarded in addition to the estimated
costs needed for future repairs, which were necessary to permanently repair the
failures in the lot.  Thus, Hoyer was
asking the jury to award nearly $1,000,000 total in damages for past and future
repair costs.  In contrast, Hardy argued
that, if the jury was to award any damages, the jury should simply award the cost
of repairs already performed, which ranged from $95,000 to $114,000, since, as
Hardy noted, the lot was now being used by Hoyer for its intended purpose.  

The jury, by its award, rejected
both parties’ suggested ranges for the proper measure of remedial damages.  Instead, as noted above, the jury awarded
$271,343.35.  This award appears to be
based upon a document introduced into evidence that bears Hardy’s letterhead
and identifies three different options “for repair” of the lot.  This document sets forth the price and basic
designs proposed for each of the three repair options and it identifies the
party that recommended each option.  Next
to option three, which detailed a price of $271,343.35, is a notation stating
that it is the option “suggested by” Hardy. 
Option three also sets forth the design specifications as follows: “mill
12 inch depth no cement, mill 8 inch base with 8% cement and overlay with 5
inch asphalt.” 

Although option three provides
specifications different from the specifications for which the parties
originally contracted, the jury was entitled to conclude from the evidence presented
that option three was appropriate to repair the existing failures in the
lot.  In sum, under the language in the
jury charge, the jury was specifically asked to award remedial damages, i.e.,
the costs of repair, and the evidence supporting the jury’s damage finding is
not so weak as to make it clearly wrong and manifestly unjust.  Accordingly, we hold that the evidence is
factually sufficient to support the jury’s damage award and it was not
excessive. 

We overrule Hardy’s fourth issue.

Breach of Contract Counterclaim

          In its
fifth issue, Hardy argues that the trial court “improperly ignored” its breach
of contract counterclaim and that it was entitled to an offset because it
substantially performed the contract and “Hoyer admitted that it owed” $20,000
under the contract.  Hardy does not
directly attack a specific jury finding. 
Rather, it presents a general complaint that it should have been allowed
to obtain through an offset the outstanding amounts on the contract on the
basis that it substantially performed the contract.  We construe Hardy’s fifth issue to present a general
challenge to the legal and factual sufficiency of the evidence to support the jury’s
finding, in response to question number six, that Hoyer did not fail to comply
with its contract with Hardy.  Based upon
this finding, Hardy recovered no damages on its counterclaim.

When a party attacks the legal
sufficiency of an adverse finding on an issue on which that party had the
burden of proof, that party must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue.  Dow
Chem. Co., 46 S.W.3d at 241.  As
noted above, when a party is challenging the factual sufficiency of a finding
regarding an issue upon which that party had the burden of proof, that party
must demonstrate that the adverse finding is against the great weight and
preponderance of the evidence.  Id. at 242. 

Although the charge did not contain
a question or instruction on substantial performance, Hardy raises this
doctrine in its appellate briefing in support of its contention that it was
entitled to recover damages against Hoyer on its breach of contract counterclaim.  The doctrine of substantial performance
allows a party who has breached a contract but has also substantially performed
that contract to recover damages for that performance. See Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990); RAJ Partners, Ltd. v. Darco Constr. Corp.,
217 S.W.3d 638, 643 (Tex. App.—Amarillo 2006,
no pet.).  The doctrine assumes that, if
there is substantial performance by the contractor, any breach is immaterial.
 Gentry v.
Squires Constr., Inc., 188 S.W.3d 396, 403 n.3 (Tex. App.—Dallas 2006, no pet.); see also Bayer Corp. v. DX Terminals, Ltd., 214 S.W.3d 586, 599
n.11 (Tex. App.—Houston [14th
Dist.] 2006, no pet.) (“[S]ubstantial performance generally permits a party to
a contract that breaches nonmaterial terms (but has otherwise substantially
performed) to sue the other party to the contract for breach.”).  A party does not substantially perform a
contract when “it is necessary, in order to make the building comply with the
contract, that the structure, in whole or in material part, must be changed, or
there will be damage to parts of the building, or the expense of such repair
will be great.”  RAJ Partners, Ltd., 217 S.W.3d
at 645 (citing Hutson v. Chambless,
157 Tex. 193, 300 S.W.2d 943, 945 (1957)).

The jury was not asked to make a finding on substantial
performance.  Nevertheless, Hardy
impliedly challenges the jury’s negative finding on its counterclaim against
Hoyer, asserting that the doctrine of substantial performance supports its
recovery of the outstanding amounts—$20,000 on a contract for over
$400,000.  The jury was presented with
evidence that the lot constructed by Hoyer suffered significant failures
shortly after its completion.  The jury
was also presented with evidence that these failures were major, rendered the
lot incapable of use for its intended purpose, and required expensive emergency
repairs.   Finally, the jury was
presented with evidence that in order to repair the lot based upon these
failures, Hoyer would have to expend significant amounts, and some estimates
exceeded the approximately $400,000 amount of the original contract.  Hardy has failed to establish as a matter of law that Hoyer breached the
contract and that Hardy was entitled to recover damages on its counterclaim
because it substantially performed the contract.  Moreover, we conclude that Hardy has failed
to show that the jury’s negative finding on its counterclaim is against the
great weight and preponderance of the evidence. 
Accordingly, we hold that the evidence is legally and factually
sufficient to support the jury’s negative finding on Hardy’s counterclaim.  

We overrule Hardy’s fifth issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.











[1]
        Hoyer
also asserted claims against a third-party contractor involved in the      paving project, but Hoyer did not proceed
to trial on those claims.

 





[2]        Neither
party challenges the submission of the estoppel question to the jury.  





[3]        Although
question number four referred to a “failure to comply,” the jury was instructed
to answer the estoppel question if it answered yes to either the breach of
contract question or warranties question.





[4]
              Hardy
did not object to this language in the charge, so we review the evidence in
accordance with the charge provided.  Wal-Mart Stores, Inc. v. Sturges, 52
S.W.3d 711, 715 (Tex. 2001) (stating that an assessment of the evidence “must
be made in light of the jury charge that the district court gave without
objection”); City of Fort Worth v.
Zimlich, 29 S.W.3d 62, 71 (Tex. 2000) (“Since neither party objected to
this instruction [regarding malice], we are bound to review the evidence in
light of this definition.”). 
Additionally, we note that Hardy’s appellate challenge is not directed
at the language of the charge, but rather at the evidence presented regarding
the amounts necessary to repair the alleged defects in the lot.

 





[5]
              The
jury was also instructed to award lost profits arising from the loss of use of
the lot area and the loss of use of adjoining land.  The jury awarded $0 for the loss of use of
the lot area and $18,000 for the loss of use of adjoining land.  Hardy does not challenge the $18,000 award
for lost profits.