

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00280-CV
_____

ANTHONY LOCASCIO AND NICOLAS LOCASCIO, APPELLANTS

V.

NINA LOCASCIO MONGRAIN AND CHARLES MONGRAIN, APPELLEES

On Appeal from County Court at Law Number 3
Lubbock County, Texas
Trial Court No. 2010-774,770; Honorable J. Phillip Hays, Presiding

September 30, 2019

## MEMORANDUM OPINION

Before QUINN, C.J.,[1] and CAMPBELL and PIRTLE, JJ.

This appeal arises from a contested probate matter that resulted in a Rule 11 settlement agreement among four siblings, which then turned into a lawsuit over implementation of that agreement. Appellants, Anthony LoCascio and Nicolas LoCascio, sued Appellees, Nina LoCascio Mongrain and her husband, Charles Mongrain, for breach

---

[1] Chief Justice Brian Quinn, not participating.

of the settlement agreement and sought specific performance of their agreement to divide a family ranch inherited from their mother. Initially, the suit included the fourth sibling, Angela LoCascio Heath, but a subsequent pleading filed by Anthony and Nicolas dismissed her from the lawsuit when their disputes were settled. The Mongrains counterclaimed alleging that Anthony and Nicolas breached their obligations under the same settlement agreement, causing monetary damages. Trial was to a jury which found that all parties had failed to comply with the settlement agreement. Since Anthony and Nicolas received a deed to their share of the family ranch when they settled with Angela, the jury found they did not suffer any monetary damages as a result of the Mongrains' breaches. Monetary damages were, however, awarded to Nina for $832.75, relating to her claim for a portion of the proceeds from a grass lease, and to Charles for $50,000, relating to his claim for lost profits. The jury also awarded both sides $90,000 in reasonable and necessary attorney's fees and additional attorney's fees in the event of successful appeals. The trial court found that Anthony and Nicolas were not entitled to any attorney's fees because they "did not recover any actual damages against" the Mongrains. Anthony and Nicolas moved for a judgment notwithstanding the verdict and the Mongrains moved for a final verdict or, alternatively, a motion for an interlocutory verdict and a motion to sever. The trial court entered its *Final Judgment* in favor of the Mongrains for damages and attorney's fees consistent with the jury's findings. Anthony and Nicolas challenge the judgment by five issues.

By their first issue, Anthony and Nicolas assert the trial court erred in rendering judgment for Charles on his breach of contract claim because, as a matter of law, he had no legally valid claim. They further contend there was no evidence to support the jury's

finding of a breach by them and no evidence to support the award of $50,000 for "lost net profits." Furthermore, they maintain that Charles's claims were barred by the doctrine of estoppel by contract and they allege the trial court erred by allowing Charles to testify using evidence of damages he failed to disclose in discovery.

In their second issue, Anthony and Nicolas contend the trial court erred in rendering judgment for Nina because, as a matter of law, she had no legally valid claim. They also allege Nina lacked standing to sue. As to Charles, they contend there was no evidence to support the jury's finding of a breach of contract by them. Finally, they contend that Nina and Charles's claims were barred by the doctrine of estoppel by contract.

By their third issue, Anthony and Nicolas allege the trial court erred in awarding attorney's fees to Nina and Charles. Specifically, they maintain the Mongrains failed to plead presentment of their breach of contract claim as required by section 38.002 of the Texas Civil Practice and Remedies Code. They also contend the Mongrains are not entitled to attorney's fees because they did not present legally sufficient evidence of a breach of contract or presentment of their breach of contract claim.

Issue four presents a challenge to the trial court's refusal to render judgment in favor of Anthony and Nicolas for attorney's fees based upon the jury's finding of a breach of the settlement agreement by Nina and Charles. Anthony and Nicolas maintain that the equitable remedy of specific performance constitutes "something of value" sufficient to support an award for attorney's fees to them.

By their fifth and final issue, Anthony and Nicolas contend the trial court erred in rendering judgment in favor of Nina and Charles because the jury's finding that they also breached the settlement agreement precluded enforcement of the agreement's release provisions.

Nina and Charles raise a cross-issue complaining of the trial court's exclusion of expert testimony from Gary Terrell who would have testified regarding an encroachment issue. An offer of proof was made during trial. A separate notice of appeal was not filed nor required because Nina and Charles do not seek to alter the trial court's judgment. *See* TEX. R. APP. P. 25.1(c).

We affirm in part and reverse and render in part the claims for monetary damages, and we render declaratory relief.

### BACKGROUND

Darlene Abel LoCascio had four children, Anthony, Nicolas, Nina, and Angela. At the time of Darlene's death in 2010, she owned a ranch in Scurry County, Texas, described as "eight tracts of land in Scurry County, Texas, approximately [3,566.62] acres," valued at $3,330,160.

In 2006, Darlene and her son-in-law, Charles Mongrain, entered into a *Farm and Ranch Lease* requiring him to pay $15,000 per year to graze his cattle on the ranch. Three years later, in 2009, Darlene and Charles signed a *Ranch Management Contract* whereby she employed him as her ranch manager, with the responsibility of normal day-to-day business operations of her ranch. The contract provided that Charles's duties were "at no expense" to him as ranch manager.

4

When Darlene died, her *Last Will and Testament* was filed for probate on May 18, 2010.  Angela was appointed independent executrix of the estate.  Under the will, Angela had broad discretion to "purchase, sell, exchange, partition, subdivide, manage, and improve real property."  On behalf of Darlene's estate, Angela signed an *Amended Ranch Management Contract* with Charles which also relieved him of any expenses associated with operation of the ranch.  By her will, Darlene devised the ranch to her four children in equal undivided shares.

For five years, before Darlene's estate was finally settled, Charles continued to run his personal cattle operations on the ranch at no expense to himself.  The five-year delay in settling Darlene's estate finally caused Anthony and Nicolas to ultimately file suit against Angela, Nina, and Charles in February 2015.  In that lawsuit they asserted that Angela was refusing to close the estate and distribute the undivided interests in the ranch despite repeated requests by them to do so.  The suit also alleged that Anthony and Nicolas were being denied access to the ranch to manage their oil and gas interests and that Charles was continuing to use the ranch "as if it were his own."  In addition to other relief, Anthony and Nicolas sought declaratory relief and attorney's fees.  In an attempt to resolve the pending suit, on November 13, 2015, the four siblings entered into a Rule 11 settlement agreement to divide the ranch somewhat differently than expressed in Darlene's will.  The settlement agreement provided as follows:

1.  [Anthony and Nicolas] are to be deeded the south half of the Scurry County Ranch ("Ranch") with the dividing property line running generally east to west so that the south half of the Ranch represents 51% of the total acreage of the Ranch.  Defendants will be deeded the north half of the Ranch, which will represent 49% of the total acreage of the Ranch.

2. [Anthony and Nicolas] are to be granted full access to the south half of the Ranch within 120 days from the date hereof.

3. Mr. Mongrain has 120 days to remove his cattle and equipment from the south half of the Ranch.

4. The estate is to build a boundary fence splitting the Ranch into north and south halves as reflected in paragraph 1. Estate will notify [Anthony and Nicolas] upon (1) completion of the survey and (2) completion of the fence. Cost of fence and survey to be paid by estate.

5. [Anthony and Nicolas] are to pay $10,000 each to Angela Heath upon closing of [their] conveyance of the south half of the Ranch.

6. The Parties agree to an easement to allow Defendants and their successors access [to] the north half of the Ranch. The estate will pay for the survey and preparation of the easement, said easement to follow the existing all-weather road that provides access to the north half of the Ranch. [Anthony and Nicolas] and [Angela, Nina, and Charles] will share equally in the cost of maintenance and repair of the access road/easement to the north half of the Ranch.

7. All lawsuits filed by the Parties to be non-suited with prejudice. All Parties agree to release each other and the estate from all claims, damages, causes of action, injuries and debts, including but not limited to all claims brought in the Lubbock County District Court case, the Lubbock County and County Court at Law No. 3 case, and the Scurry County case.

8. Closing of the conveyances contained in paragraph 1 will occur within 120 days from the date hereof. The estate's lawyer shall prepare the closing documents. If any party chooses to obtain a title policy, said party will be solely responsible for the costs of the title policy.

9. The Parties agree to the cancellation of the Farm and Ranch lease and the ranch management agreements with respect to the south half of the Ranch upon closing of the conveyances contained in paragraph 1.

10. [Charles] agrees to haul of [sic] the mobile homes and the 3 junk vehicles located on the south half of the ranch.

11. [Anthony and Nicolas] will have the right to access the Ranch with [the estate lawyer] to view the location of the proposed fence once the location of the fence is determined upon completion of the survey.

12. Once all estate expenses are paid, the remaining funds shall be distributed pursuant to the terms of the Last Will and Testament of Darlene LoCascio.

13. The Parties agree in the event of a dispute concerning the interpretation of the agreement, to submit such disagreement to a mediator; if unable to agree upon a mediator, the Parties will petition the Lubbock County Court to appoint a mediator.

Under the terms of the settlement agreement, conveyances of the south and north tracts were to occur no later than March 12, 2016. The north tract was landlocked; thus, the proposed conveyance to Angela and Nina included an access easement across the south tract for the benefit of Angela and Nina, as well as their successors.

After the settlement agreement was signed, several disputes arose among the parties. On December 10, 2015, Nina and Charles proposed a *Release and Settlement Agreement* that deviated from the original Rule 11 settlement agreement by specifying a "fifty foot (50') access and utility easement" instead of the previously agreed-to non-specific width access easement that was "to follow the existing all-weather road."[2] At the time, Nina and Charles did not offer to compensate Anthony and Nicolas for any additional burden upon the property being awarded to them. Anthony and Nicolas did not agree to the proposed new *Release and Settlement Agreement* and the dispute continued*.*

Another issue arose after a survey was completed in 2016 that reflected the existing all-weather road to be used for the easement did in fact encroach onto adjacent property. The survey showed that "a short little segment between the county road or state road" traversed over neighboring property belonging to John Billy and Peggy Koonsman. Another issue arose concerning the relocation of a gate and cattle guard on the south tract without notice to or permission from Anthony and Nicolas. Anthony and Nicolas

---

[2] The record establishes that the existing all-weather road was approximately twenty-feet wide.

7

contended that Charles had failed to timely cancel the *Farm and Ranch Lease* and *Ranch Management Agreement.*[3] As per paragraph thirteen of the Rule 11 settlement agreement, any dispute in its interpretation was subject to a second mediation. In that regard, a second mediation was held on July 26, 2016,[4] to address Nina's request for a utility easement. The second mediation did not resolve the dispute. The encroachment issue was not raised during the second mediation.

The partition of the ranch and conveyance of the two tracts did not occur by the March 12, 2016 deadline because Nina and Charles refused to close under the terms of the original settlement agreement. On May 5, 2016, counsel for Anthony and Nicolas emailed a formal demand letter to counsel for Nina and Charles (also the estate's counsel) notifying them of their breach of the settlement agreement and requesting that the disputes be cured before June 4, 2016. In response, on May 27, 2016, counsel for Nina and Charles provided counsel for Anthony and Nicolas a proposed *Partition Deed and Easement Agreement* that included a paragraph entitled "Relocation of Easement." It provided as follows:

> [i]f it is determined by a court of competent jurisdiction that any portion of the Easement encroaches onto property that is not a portion of the South Tract (an "Encroachment"), then the Parties agree that the Easement shall be relocated to the portion of the South Tract most proximate to the Encroachment. The cost of such relocation shall be allocated in accordance with the terms set forth in Exhibit C.

---

[3] Paragraph nine of the settlement agreement provided for cancellation "upon closing" of the conveyances which did not occur as contemplated by the terms of the agreement.

[4] Contrary to Nina and Charles' assertion that Anthony did not attend the second mediation, he participated by phone.

Exhibit C was a proposed *Road Maintenance* contract between the parties and a contractor.

A month later, the alleged breaches had not been resolved and on June 8, 2016, Anthony and Nicolas supplemented their petition against Angela, Nina, and Charles seeking specific performance of the Rule 11 settlement agreement, consequential damages, and attorney's fees. They also sued Nina and Charles for damages and for the "free use" of the ranch after Darlene had passed away. Nina and Charles answered the suit with numerous affirmative defenses.

Eight months later, on February 24, 2017, Angela, Anthony, and Nicolas unilaterally entered into a *Release and Settlement Agreement* by which Angela, as executrix of Darlene's estate, conveyed an undivided one-half interest in the south tract to both Anthony and Nicolas and an undivided one-half interest in the north tract to herself by *Partition Deed and Easement Agreement*. The new settlement agreement reduced the amount owed to Angela from $20,000 to $2,000 to compensate Anthony and Nicolas for agreeing to a forty-foot wide access and utility easement in favor of the north tract. The encroachment issue was not addressed. Nina questioned the validity of the partition deed based on the encroachment issue and refused to mutually sign it.

Thereafter, on March 23, 2017, Anthony and Nicolas amended their supplemental petition by dismissing Angela from the suit. They then sought a declaratory judgment that the partition deed between them and Angela, as executrix, was valid and that Nina no longer had a legal claim to the south tract. They also sought damages and reasonable attorney's fees.

Nina and Charles responded to the amended pleading by counterclaiming that Anthony and Nicolas had breached the original Rule 11 settlement agreement by "failing to execute the documents necessary to carry out the conveyances contemplated" which they had presented to them and which Anthony and Nicolas had refused to sign. They also filed a *Notice of Lis Pendens* creating a cloud on title to prevent Anthony and Nicolas from selling their portion of the ranch.

After the *Partition Deed and Easement Agreement* was signed and recorded, Anthony and Nicolas entered into a month-to-month grazing lease on the south tract with a third party and earned $3,331. Nina and Charles then fired their attorney for failing to make progress on obtaining a valid easement.[5] With new representation, Nina counterclaimed by asserting that she was entitled to $832.75, or one-fourth of the $3,331 in proceeds from the short-term grazing lease on the south half of the property because the partition deed conveying the south tract was invalid since she was not a signatory. Charles also counterclaimed alleging that Anthony and Nicolas had breached the Rule 11 settlement agreement by causing him to remove his cattle from the south tract before closing. He based his claim on the belief that Anthony and Nicolas would honor the terms of the Rule 11 settlement agreement with Nina. Charles also alleged that he lost the benefit of the bargain of his grass lease on the south tract.

According to Nina, during the summer of 2017, her new counsel resolved the encroachment issue with the adjacent property owners. Finally, on March 2, 2018, Nina

---

[5] The *Notice of Lis Pendens* filed by the Mongrains' former attorney was released on January 4, 2018, by new counsel for not complying with the Texas Property Code and a new *Notice of Lis Pendens* was filed that same day.

was conveyed her undivided one-half interest in the north tract and all parties signed a *Correction Partition Deed and Easement Agreement*. On March 16, 2018, the parties then signed a *Boundary Line Agreement and Grant of Encroachment & Access Easement* with the Koonsmans.

This did not, however, resolve the dispute between the parties and, in April of 2018, the case was tried to a jury. The jury found that Nina and Charles failed to comply with their obligations under the Rule 11 settlement agreement and likewise found that Anthony and Nicolas had failed to comply with their obligations. Regarding damages claimed by Anthony and Nicolas, the jury was instructed to consider the reasonable value of a grazing lease on the south tract, a hunting lease, and the reasonable and necessary cost to replace the gate and cattle guard that were in dispute. In response, the jury found they had suffered zero damages from Nina's and Charles's breaches. Regarding Charles, the jury found that breaches by Anthony and Nicolas resulted in lost net profits from a grazing lease on the south tract and awarded him $50,000. Regarding Nina, the jury awarded her $832.75 for one-fourth of the short-term grazing lease payments received by Anthony and Nicolas. Both sides were awarded $90,000 in attorney's fees and an additional $20,000 for each level of appeal. Anthony and Nicolas moved for judgment notwithstanding the verdict; however, the trial court entered judgment in favor of Nina and Charles and this appeal followed.

### RULE 11 SETTLEMENT AGREEMENTS

"[A] family settlement agreement is an alternative to formal administration of a decedent's estate and is a favorite of the law." *Estate of Riefler*, 540 S.W.3d 626, 634 (Tex. App.—Amarillo 2017, no pet.) (citing *Natural Gas Pipeline Co. v. Law*, 65 S.W.3d

121, 126 (Tex. App.—Amarillo 2001, pet. denied)).  Rule 11 of the Texas Rules of Civil Procedure provides that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."  TEX. R. CIV. P. 11.  A settlement agreement must comply with the provisions of Rule 11 to be enforceable.  *Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995); *West Star Transp., Inc. v. Robison*, 457 S.W.3d 178, 191-92 (Tex. App.—Amarillo 2015, pet. denied).

A Rule 11 settlement agreement is considered contractual in nature; *Coale v. Scott*, 331 S.W.3d 829, 832 (Tex. App.—Amarillo 2011, no pet.), and as such, is interpreted in the same manner as are contracts in general.  *Golden Spread Elec. Coop., Inc. v. Denver City Energy Assoc., L.P.*, 269 S.W.3d 183, 190-91 (Tex. App.—Amarillo 2008, pet. denied).  We look to the plain meaning of the words of a Rule 11 settlement agreement to determine the nature and extent of the parties' agreement.  *Id.*  The elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of that breach.  *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied).

### STANDARD OF REVIEW—LEGAL SUFFICIENCY

Legal sufficiency points of error are designated "no evidence points" or "matter of law points" depending upon whether the complaining party had the burden of proof.  *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo 1989, writ denied).  The appropriate legal sufficiency challenge to a fact finding upon which the complaining party does not have the burden of proof is a "no evidence"

12

point. *Id.* Conversely, the appropriate legal sufficiency challenge to a fact finding upon which the complaining party had the burden of proof is a "matter of law" point. *Id.*

In reviewing a "no evidence" point, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Id.* If there is more than a scintilla of evidence to support the finding, the "no evidence" challenge must fail. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S.1030, 124 S. Ct. 2097, 158 L. Ed. 2d 711 (2004).

In reviewing matter of law points, the party who bore the burden of proof below on the challenged issue must show on appeal that a contrary finding was established as a matter of law. *RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 648 (Tex. App.—Amarillo 2006, no pet.). First, we examine the record for evidence supporting the finding, ignoring all evidence to the contrary. *Id.* If no evidence appears to support the finding, we must then examine the entire record to determine whether the contrary position is established as a matter of law. *Id.* A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *City of Keller v. Wilson*, 168 S.W.3d 802, 814-16 (Tex. 2005).

In reviewing a legal sufficiency issue, we may sustain the challenge only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *King Ranch, Inc.*, 118 S.W.3d at 751; *Raw Hide Oil & Gas, Inc.*, 766 S.W.2d at 275-76. In determining whether there is legally sufficient evidence to support the finding under review, a reviewing court must view the evidence in a light most favorable to the judgment, indulging every reasonable inference that supports it, but the court may not disregard evidence that allows only one inference. *City of Keller*, 168 S.W.3d at 822. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

### ISSUES ONE AND TWO—THE JUDGMENT IN FAVOR OF NINA AND CHARLES MONGRAIN

Anthony and Nicolas assert the trial court erred in rendering judgment in favor of Nina and Charles because, as a matter of law, they had no legally valid breach of contract claims. They also assert there was no evidence to support the $50,000 damages award to Charles and that Nina lacked standing to sue them for a portion of the grazing lease income earned after the February 24, 2017 partition deed was signed. We agree.

In questions three and four, the jury found Anthony and Nicolas failed to comply with the Rule 11 settlement agreement. None of the parties dispute that the Rule 11 settlement agreement was a valid, enforceable contract and none of the parties ever repudiated the agreement. Although Charles was not an heir, he was a named party in the original litigation and a party to the Rule 11 settlement agreement and his breach of

14

contract claims against Anthony and Nicolas were tangentially related to Nina's standing as an heir.

Critical to Nina and Charles' breach of contract claims was their allegation that Anthony and Nicolas failed to ensure that Nina was conveyed her undivided share of the north tract with the requisite access easement. In their first amended pleading, Nina and Charles alleged Anthony and Nicolas breached the Rule 11 settlement agreement by "failing to execute the documents necessary to carry out the conveyances contemplated in the Rule 11 Agreement." By their second amended pleading, they alleged that the partition deed dated February 24, 2017, among Angela, Anthony, and Nicolas was invalid because Angela did not have the authority to execute it and because it did not grant Nina a valid easement to access the north tract.

Both of these contentions fail. The proposed *Release and Settlement Agreement* originally provided by counsel for Nina and Charles, in December 2015, deviated from the terms of the Rule 11 settlement agreement by including a provision for a fifty-foot access and utility easement instead of the agreed-to easement following the "existing all-weather road." In response, counsel for Anthony and Nicolas emailed Nina and Charles' attorney writing, "I know my folks will not agree to add a wider utility easement. . . . [S]end me a partition deed and easement consistent with the signed agreement that limits the easement provided as expressed in that agreement—access along the existing all-weather road?"

Interpretation of contracts granting easements are reviewed *de novo*. *Ferrara v Moore*, 318 S.W.3d 487, 490 (Tex. App.—Texarkana 2010, pet. denied). It is well

established that the actual language of the granting instrument controls. *See Kearney & Son v. Fancher*, 401 S.W.2d 897, 905 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.). "Where an easement is created by express grant or reservation, the extent of the right acquired depends not upon user, as in the case of easement created by prescription . . . but upon terms of the grant or reservation properly construed." *Id.* We may not construe an easement to exceed the rights expressly conveyed. *Marcus Cable Assocs.*, *L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).

The basis for Nina and Charles's claim was that Nina was denied a valid easement to access the north tract of the ranch that did not encroach on neighboring property. However, during her cross-examination, Nina conceded that she never made a demand for Anthony or Nicolas to remedy the encroachment issue.

The evidence shows that while Anthony and Nicolas never denied Nina an access easement in accordance with the terms of the original settlement agreement and, thus, did not breach that agreement, the existing easement did encroach upon the property of adjacent landowners. That easement, however, had been traversed by the LoCascio family for over five decades and the parties were eventually able to work out an agreement with the adjacent land owners.[6] As per paragraph six of the original settlement agreement, Nina and her successors were offered an "easement to follow the existing all-weather road that provides access to the north half of the Ranch." The easement included in the Rule 11 settlement agreement solely mentions use for the purpose of ingress to

---

[6] Had the encroachment issue not been resolved, and had the property been deeded to Angela and Nina in accordance with the terms of the original settlement agreement, Angela and Nina may have had a claim for breach of warranty of title, subject to their claim of an easement by prescription.

16

and egress from the north tract. After the Rule 11 settlement agreement was entered into by the parties, Nina sought more than was bargained for by asking for a wider easement and the inclusion of utilities without any expectation of recompence to Anthony and Nicolas. By refusing to execute documents that were contrary to the terms of the Rule 11 settlement agreement, Anthony and Nicolas did not fail to comply with the terms of that agreement. In this regard, plain language of the agreement allows for only one inference and we may not disregard it. *City of Keller*, 168 S.W.3d at 822. As such, the jury's findings to questions three and four were contrary to what the evidence showed.

Nina and Charles' argument that Angela had no authority to enter into a subsequent settlement agreement with Anthony and Nicolas also fails. Although equitable title vests immediately in a decedent's heirs, legal title remains with the estate's personal representative. *See Armes v. Thompson*, 222 S.W.3d 79, 83 (Tex. App.— Eastland 2006, no pet.). *See also* TEX. EST. CODE ANN. § 101.001(a) (West 2014). As independent executrix, Angela had full power and authority to execute a deed of conveyance to any property belonging to the estate. *See* TEX. EST. CODE ANN. § 402.052 (West 2014). A deed is void when it is executed by a person wholly without authority to do so. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 675 (1942). Darlene's will granted Angela the discretion to "purchase, sell, exchange, partition, subdivide, manage, and improve real property." Thus, Angela had the authority to execute the February 24, 2017 partition deed conveying the south half of the ranch to Anthony and Nicolas.

We conclude Anthony and Nicolas did not breach the Rule 11 settlement agreement by refusing to execute settlement documents that included an easement beyond that originally agreed to by the parties. Also, Anthony and Nicolas did not breach

17

the Rule 11 settlement agreement by entering into a subsequent settlement agreement with Angela that resulted in the conveyance of the south tract. Accordingly, we hold that the *Partition Deed and Easement Agreement* signed on February 24, 2017, was valid and conveyed the south tract to Anthony and Nicolas.

### CHARLES'S DAMAGES

In its answer to question seven, the jury awarded Charles $50,000 in "[l]ost profits from giving up the grazing lease as to the south tract of the Ranch." Anthony and Nicolas contend the trial court abused its discretion in allowing Charles to testify about expenses in calculating his lost profits and that they were harmed as a result. They also argue there is no evidence to support the jury's award. Again, we agree.

Charles testified he is a rancher. He conducted his cattle operation on the entire ranch for five years following Darlene's death. As of March 25, 2016, he no longer had cattle on any part of the ranch because he moved his cattle to his property in Guthrie in anticipation of closing the partition agreed to in the original settlement agreement.

During Charles's testimony, counsel for Anthony and Nicolas asked to approach the bench outside the hearing of the jury to object to certain testimony that was not previously disclosed during discovery. The jury was removed and Charles's deposition testimony regarding his monthly lost profits of $5,541.66 was read into the record. It provided as follows:

> [w]e took the number of cattle average – actually the average number of calves we would sell in a year and the average price we would get those cows. We divided for – those calves for. We divided that total amount by 12 at the 5,000-dollar a month number.

18

Charles was then asked, "[i]s there any other information that goes into your calculation?" He answered, "[n]o, sir." Notwithstanding the fact that Charles's discovery answers were never supplemented, the trial court allowed Charles to testify about his damages. Counsel for Anthony and Nicolas was granted a running objection to Charles's testimony.

Anthony and Nicolas assert that under Rule 193.6 of the Texas Rules of Civil Procedure, Charles should not have been permitted to testify to matters he did not timely disclose in his responses to requests for disclosure. Rule 193.6 provides for exclusion of evidence that is not supplemented in a discovery response. TEX. R. CIV. P. 193.6. Additionally, Rule 193.5(a) imposes a duty on a party to supplement a discovery response that is incomplete. TEX. R. CIV. P. 193.5(a). The burden is on the proponent of the evidence to establish an exception of good cause or lack of unfair surprise to the opposing party before evidence may be admitted. TEX. R. CIV. P. 193.6(b). Without an exception, exclusion is automatic. *See Barton Food Mart*, *Inc. v. Botrie*, No. 03-17-00292-CV, 2018 Tex. App. LEXIS 8673, at *14-15 (Tex. App.—Austin, Oct. 25, 2018, pet. denied) (mem. op.).

The burden was on Charles to establish an exception to his failure to supplement his discovery responses. During the discussion outside the jury's presence, Charles's counsel did not establish an exception; rather, he accused opposing counsel of failing to properly follow up in the deposition after Charles had already stated for the record that no other information had factored into his calculations. Accordingly, the trial court's decision to allow Charles's testimony concerning lost profits was an abuse of discretion. As such, Anthony and Nicolas were harmed by the jury's finding that they owed Charles $50,000 in lost profits.

Additionally, Anthony and Nicolas maintain that Charles's calculations were based on an improper measure of damages resulting in legally insufficient evidence to support the jury's award. Again, we agree. The proper measure of damages for lost profits is lost net profits, not lost gross profits. *Hoss v. Alardin*, 338 S.W.3d 635, 654 (Tex. App.—Dallas 2011, no pet.). "Net profit" of a business is what remains after deducting from its total receipts all of the expenses incurred in carrying on the business. *South Plains Switching, Ltd. v. BNSF Ry.*, 255 S.W.3d 690, 705 (Tex. App.—Amarillo 2008, pet. denied).

Charles's calculations consisted of 100 "momma cows" with a five percent death loss and an *average* weight of 700 pounds sold for an *average* price of ninety-eight cents per pound. He was claiming damages for a two-year period spanning from the date he removed his cattle from the ranch in late March 2016, to the date Nina was conveyed the north tract on March 2, 2018. Regarding expenses, he testified to hauling the cattle to sale, use of a truck or trailer and gas, a sales commission, hay, day workers at $150 per day, and $1,200 to $1,500 per year in vaccinations. No specific dollar amounts or documentation was offered; neither were details provided on the number of day workers and number of days he employed them over the two-year period at the daily rate of $150. The total for annual vaccinations was also not explicit. Charles's testimony did nothing more than create a mere surmise or suspicion of fact that left the jury to speculate on the amounts to deduct from gross profits thereby resulting in an improper award of damages.

### NINA'S DAMAGES

Nina also claimed that she was entitled to one-fourth of the income from the temporary grazing lease entered into between Anthony and Nicolas and a third party after

the south tract was deeded to them by Angela. Her contention was that the 2017 partition deed was invalid and "by the implicit terms of the Rule 11 Agreement" she was "supposed to receive the benefit of that lease." In response to that request, the jury awarded her $832.75 in damages.

Nina's argument fails for two reasons. First, as we have held hereinabove, the 2017 *Partition Deed and Easement Agreement* was valid and it conveyed a fee simple estate in the south tract to Anthony and Nicolas. As such, Nina did not have an ownership interest in the property or in any proceeds from the grazing lease of that property subsequent to its conveyance to Anthony and Nicolas. Secondly, a party must have both standing and the legal capacity to bring a lawsuit. *Austin Nursing Ctr.*, *Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). Standing concerns whether a party was personally aggrieved, while capacity concerns whether a party has legal authority to act. *Id.* at 848-49.

If the 2017 deed was valid, then Nina did not own an interest in the south half of the ranch property. Accordingly, she lacked standing to sue on that claim. Conversely, even if the 2017 deed was invalid, only Angela, as executrix, could sue on behalf of the estate to recover a portion of the grazing lease income. *See* Tex. Est. Code Ann. § 351.054(a)(1) (West 2014). *See also Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971) (noting that heirs to an estate are not entitled to maintain a suit for recovery of property belonging to the estate). As such, Nina had neither standing nor capacity to make a claim for any portion of the grazing lease income.

Because we find that the jury's damages awards of $50,000 to Charles and $832.75 to Nina are not supported by legally sufficient evidence, issues one and two are sustained. Our disposition of these issues renders moot any discussion regarding the claim that Nina and Charles's claims are barred under the theory of estoppel by contract. *See* TEX. R. APP. P. 47.1.

### ISSUE THREE—ATTORNEY'S FEES AWARDED TO NINA AND CHARLES

By their third issue, Anthony and Nicolas pose a challenge to the attorney's fees awarded to Nina and Charles. They maintain the evidence supporting an award of attorney's fees to Nina and Charles is legally insufficient. Our disposition of issues one and two, in which we concluded that Anthony and Nicolas did not breach the Rule 11 settlement agreement and our conclusion that the February 24, 2017 partition deed was valid, also renders any discussion on the propriety of the award of attorney's fees to Nina and Charles moot. Without a favorable judgment, Nina and Charles are not entitled to the recovery of any attorney's fees for breach of contract counterclaims. As such, issue three is sustained.

### ISSUE FOUR—ATTORNEY'S FEES FOR ANTHONY AND NICOLAS

By their fourth issue, Anthony and Nicolas assert the trial court erred in failing to render judgment in their favor for the attorney's fees found by the jury based on the equitable remedy of specific performance. Problematic to their claim for recovery of attorney's fees based upon specific performance is the fact that they did not actually obtain any specific performance. Specific performance is an equitable remedy for a breach of contract. *Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). It is not a separate cause of action; rather, it is an

22

equitable remedy used as a substitute for monetary damages when such damages would be inadequate. *Id.* A party seeking specific performance "must plead and prove that [it] was ready, willing, and able to timely perform [its] obligations under the contract." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008). A party must also show that it has complied with its obligations under the contract. *Id.* at 594.

### ANALYSIS

By their supplemental pleadings, Anthony and Nicolas sought "specific performance of the conveyances required by the [Agreement]" and also sought declaratory relief that the February 24, 2017 partition deed from Angela was valid. Nina and Charles argue that Anthony and Nicolas neither argued for nor submitted a question to the jury on specific performance and are, therefore, not now entitled to that remedy. They contend the "vague reference to equitable relief" in the pleadings filed by Anthony and Nicolas does not entitle them to specific performance and the failure to request a jury question on specific performance waives the issue on appeal. We agree.

Having failed to submit an issue on specific performance and having failed to plead and prove a viable cause of action for specific performance based upon the standing of the parties at the time of trial, Anthony and Nicolas are not now entitled to relief for any claim of specific performance. Accordingly, their claim for the recovery of attorney's fees based upon specific performance similarly fails. Issue four is overruled.

### ISSUE FIVE—RELEASE PROVISIONS OF RULE 11 SETTLEMENT AGREEMENT

By their fifth and final issue, Anthony and Nicolas contend the trial court erred in rendering judgment in favor of Nina and Charles because the jury's finding that they also

breached the settlement agreement precluded enforcement of the agreement's release provisions. Because we have already determined that the trial court erred in rendering judgment in favor of Nina and Charles, issue five is also pretermitted. *See* TEX. R. APP. P. 47.1.

### NINA AND CHARLES'S CROSS-ISSUE

Nina and Charles raise a cross-issue complaining of the trial court's exclusion of expert testimony from a witness who would have testified regarding the encroachment issue. An offer of proof was made during trial. Because this court has determined that Nina and Charles are not entitled to the recovery of damages or other relief, the exclusion of the testimony in question, even if erroneous, was not harmful. Accordingly, Nina and Charles's cross-issue is overruled.

### CONCLUSION

The trial court's judgment that Anthony and Nicolas LoCascio take nothing on their claims is affirmed. The trial court's judgment that Nina and Charles Mongrain recover judgment against Anthony and Nicolas is reversed and judgment is rendered that they take nothing on their counterclaims. Judgment is also rendered declaring that the *Partition Deed and Easement Agreement* dated February 24, 2017, conveying the south tract of the ranch to Anthony LoCascio and Nicolas LoCascio is valid.

Per Curiam