**Opinion filed September 16, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00371-CV

_____

## WEST TEXAS LANDSCAPE, INC. D/B/A TAYLOR LANDSCAPE CO., Appellant

## V.

## MARK MENESES, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 19,720**

### M E M O R A N D U M   O P I N I O N

This appeal stems from a contract dispute over West Texas Landscape Inc.'s (WTL) construction of a backyard pool, landscaping, and paved areas at the home of Mark Meneses.  WTL sued Meneses claiming breach of contract and sought payment on the contract.  Meneses made numerous complaints regarding the lack of quality of the work and filed a counterclaim asserting that the job was deficient and

that WTL should pay the difference in the amount owed and the amount it would take to remedy the situation. After a bench trial, the trial court issued a take-nothing judgment against WTL and awarded Meneses economic damages in the amount of $15,595 in addition to attorney's fees and interest. We affirm the judgment of the trial court.

WTL brings fourteen issues on appeal. A pivotal issue is whether the Findings of Fact and Conclusions of Law sent to the parties via e-mail from the trial court's administrator are the findings and conclusions for this case.

*Background Facts*

On May 23, 2012, Appellant entered into a contract with Meneses for the construction of a pool and the surrounding landscaping, including things such as fire bowls, stone pedestals, palm trees, plants, pavers, irrigation equipment, pumps, and landscaping rocks. The written contract included the following undated payment schedule:

20% Due Upon Contract Signing = $17,600.00 (paid 5/23/12)

10% Due Upon Excavation = $8,800.00 (paid 6/1/12)

10% Due Prior to Gunite = $8,800.00 (UNPAID)

20% Due Upon Completion of Gunite = $17,600.00 (paid 6/22/12)

15% Due Upon Tile & Coping = $13,200.00 (paid 9/4/12)

15% Due Upon Paver Delivery = $13,200.00 (paid 9/4/12)

10% Due Upon Completion = $8,800.00 (UNPAID)

Base Contract Total = $88,000

The first payment made to Appellant was the 20% due upon the contract signing, which occurred on May 23, 2012. The 10% due upon excavation was also paid in a timely fashion. Meneses failed to make the payment of $8,800 due prior to gunite. Appellant made a request on April 24, 2013, to Meneses for payment of

2

the unpaid $8,800 that was due prior to gunite, but it was not paid. Appellant, however, continued to work, and Meneses paid the next amount due of $17,600 on June 22, 2012, upon completion of gunite. Meneses made all other payments except the last payment on the schedule because of his complaints of lack of job quality. Accordingly, a total of $17,600 of the scheduled payments was left unpaid by Meneses. Appellant later filed suit on August 15, 2016, and Meneses counterclaimed.

After a bench trial, the trial court entered a judgment in favor of Meneses on August 30, 2019. Appellant requested Findings of Fact and Conclusions of Law on September 11, 2019. The trial court sent the parties an e-mail and unsigned "draft" findings and conclusions asking the parties to "[p]lease let us know if you have any requests to be added to this and [the judge] will consider them." It does not appear that the parties responded to the trial court. The trial court never signed or filed with the district clerk any Findings of Fact and Conclusions of Law. Appellant eventually filed an untimely Notice of Past Due Findings of Fact and Conclusions of Law.

*Issue One*

Appellant's first issue addresses whether the e-mailed "draft" Findings of Fact and Conclusions of Law presented to the parties by the trial court are indeed the trial court's official findings and conclusions in this case. If not, Appellant asserts that the trial court's failure to file with the clerk the findings and conclusions, despite Appellant's timely request, caused harmful error to Appellant in appealing the judgment in this case. We disagree.

*Standard of Review*

In its first issue, Appellant addresses a matter of law upon which any alleged harm is dependent. Under Rule 296 of the Texas Rules of Civil Procedure, the procedure for requesting findings of fact and conclusions of law after a bench trial

are clearly set out. Any party may file a request for findings of fact and conclusions of law in any case tried without a jury within twenty days after the judgment is signed. TEX. R. CIV. P. 296. When the trial court fails to respond to a timely request for findings within twenty days, the requesting party must file a notice of past due findings within thirty days of the original request. TEX. R. CIV. P. 297; *Bluebonnet Fin. Assets v. Miller*, 324 S.W.3d 600, 602 (Tex. App.—El Paso 2009, no pet.). A party who fails to file a notice of past due findings and conclusions, or files an untimely notice of past due findings and conclusions, waives a complaint on appeal regarding a trial court's failure to file findings of fact and conclusions of law. *See Interest of S.M.*, 616 S.W.3d 53, 59 (Tex. App.—Tyler, 2020, no pet.); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (complete failure to file notice of past due findings); *Fleming v. Taylor*, 814 S.W.2d 89, 91 (Tex. App.—Corpus Christi-Edinburg 1991, no writ) (untimely filed notice of past due findings). When no findings of fact and conclusions of law are filed, we must presume the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Jistel v. Tiffany Trail Owners Ass'n, Inc.*, 215 S.W.3d 474 (Tex. App.—Eastland 2006, no pet.).

*Analysis*

On August 30, 2019, the trial court issued a take-nothing judgment against Appellant and awarded Meneses economic damages in the amount of $15,595 in addition to attorney's fees and interest. Appellant filed a request for Findings of Fact and Conclusions of Law on September 11, 2019. On September 27, 2019, the trial court's administrator e-mailed each party and stated the following: "Counsel – Attached please find a draft of the Court's Findings of Fact and Conclusions of Law

in this matter. Please let us know if you have any requests to be added to this and Judge Harrison will consider them." A list of unsigned Findings of Fact and Conclusions of Law were attached to the e-mail. These findings and conclusions were never filed by the trial court. No further communication between the trial court and the parties on this matter is in the record before us except for the Notice of Past Due Findings of Fact and Conclusions of Law that Appellant filed on February 11, 2020. Appellant attached to the notice the "draft" version found in the court's e-mail.

If the trial court fails to file timely findings and conclusions, the party making the request shall, within thirty days after filing the original request, file with the clerk a "Notice of Past Due Findings and Conclusions." TEX. R. CIV. P. 297. Upon filing this notice, the time for the trial court to file findings and conclusions is extended to forty days from the date of the original request. *Id.* Therefore, based upon the date that Appellant filed the timely request for findings and conclusions, Appellant had until October 11, 2019, to file the Notice of Past Due Findings and Conclusions per Rule 297. However, the notice was not filed until February 11, 2020—*4 months late*. Appellant's counsel conceded both in Appellant's brief and at oral argument that he failed to timely file the Notice of Past Due Findings and Conclusions.

We have held that a party waives its right to challenge a failure to file findings if the party does not file a notice of past due findings as Rule 297 requires. *See Interest of B.G.O.*, No. 11-19-00151-CV, 2020 WL 762629, at *4 (Tex. App.— Eastland Feb. 14, 2020, no pet.) (mem. op.) (citing *Las Vegas Pecan & Cattle Co., Inc. v. Zavala Cty.*, 682 S.W.2d 254 (Tex. 1984)). If the trial court fails to file findings in response to a proper and timely request, the court of appeals must presume the trial court made all the findings necessary to support the judgment. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017). The record does

not show that the trial court filed timely findings of fact and conclusions of law, it merely sent a draft of same to the parties for comment or suggested edit. We have reviewed the file, and as a matter of law, no findings of fact or conclusions of law were filed by the court with the district clerk pursuant to Rule 297. Importantly, however, as discussed below, we have a full transcription of the bench trial for our review.

Appellant cites *Kendrick v. Garcia*, 171 S.W.3d 698 (Tex. App.—Eastland 2005, pet. denied), in which we held that a letter ruling issued by the trial court constituted a final version of findings and conclusions, and argues that *Kendrick* is analogous to the case before us now. In *Kendrick*, however, we held that the trial court stated its intent that we rely on the letter as the trial court's findings and conclusions. 171 S.W.3d at 701. The case presently before us is distinguished by the lack of express or implied intent by the trial court that we rely on the "draft" version of the court's findings and conclusions as final. *See Evans v. Smith*, No. 11-04-00263-CV, 2006 WL 133701 (Tex. App.—Eastland Jan. 19, 2006, no pet.) (mem. op.). Here, the trial court referred to the findings and conclusions as a "draft" and expressed a willingness to consider changing or altering that initial version e-mailed to each party; the trial court had not signed and did not file the document. Therefore, we disagree with Appellant's contention that this case is similar to *Kendrick* and agree with Meneses's assertion that we cannot consider the "draft" Findings of Fact and Conclusions of Law to be the trial court's final product or decisions on those matters. Thus, on appeal the trial court's judgment implies all findings necessary to support it. *See Ad Villarai*, 519 S.W.3d at 135; *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

While Appellant's request for the trial court to enter findings and conclusions was waived, even had there been no such waiver, there was no harm to Appellant.

Under Rule 296, harm is presumed if the complaining party makes a proper and timely request to the trial court for findings unless the contrary appears on the face of the record. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. TEX. R. APP. P. 44.1(a)(2). However, no harm to Appellant is present in this case because there is a complete reporter's record and because Appellant was able to fully brief, and we are able to fully review, whether the judgment is supported by legally and factually sufficient evidence. *See In re J.I.T.P.*, 99 S.W.3d 841, 849 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Therefore, despite the absence of findings and conclusions, Appellant can properly present this case to our court. *See* TEX. R. APP. P. 44.1(a)(2). We overrule Appellant's first issue.

*Standard of Review for Remaining Issues*

In a nonjury trial, where no findings of fact or conclusions of law are filed, it is implied that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus.*, 835 S.W.2d at 83. When, however, as in this case, a reporter's record is filed, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Jistel*, 215 S.W.3d at 479. We conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or a trial court's findings of fact. *See Roberson*, 768 S.W.2d at 281; *Jistel*, 215 S.W.3d at 479. In the absence of findings, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict

under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 812–22, 827. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810.

In analyzing a factual sufficiency challenge, we must consider and weigh all of the evidence and determine whether the evidence in support of a finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In a bench trial, the trial court, as the factfinder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). In determining whether some evidence supports the judgment and the implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (quoting *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 613 (Tex. 1950)). Therefore, the trial court's judgment must be affirmed if it can be upheld on any legal basis that has support in the record. *Id.*; *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The trial court assesses the credibility of the witnesses, determines the weight of the testimony, and resolves conflicts and inconsistencies in the testimony. *See*

8

*Lyles*, 825 S.W.2d at 493. If the evidence falls "within [the] zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 822. In determining whether *legally* sufficient evidence supports the finding under review, we consider evidence favorable to the finding, if a reasonable factfinder could consider it, and disregard evidence contrary to the finding, unless a reasonable factfinder could not disregard it. *Id.* at 827. In a *factual* sufficiency review, we view all of the evidence in a neutral light and set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence such that it is clearly wrong and unjust. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). If a party challenges both the legal and factual sufficiency of evidence, we first review for legal sufficiency and only reach a factual sufficiency review if the evidence is found to be legally sufficient. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

*Issues Two and Ten*

We will analyze Appellant's second and tenth issues, concerning the application of the statute of frauds, together. In its second issue, Appellant asserts that the statute of frauds applies to this contract and that, therefore, the trial court erred in finding that the parties amended the written agreement, either orally or in any unwritten manner, to include a requirement that Appellant had to request payment when it was due from Meneses.

Appellant's asserts in its tenth issue that the trial court erred in finding that the parties amended the contract so as to delete the additional charge for a pool finishing plaster product called Diamond Brite Quartz.

9

*Standard of Review*

"Whether a contract comes within the statute of frauds is a question of law, which we review de novo." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015).

*Analysis*

It has long been understood that, to satisfy the statute of frauds, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)). If a contract falls under the statute of frauds, the promise or agreement is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2015).

The statute of frauds is an affirmative defense to a breach of contract claim. TEX. R. CIV. P. 94. "The party pleading the statute of frauds bears the initial burden of establishing its applicability." *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). It is undisputed that Appellant did not plead the statute of frauds as an affirmative defense. However, Appellant asserts that the statute of frauds was tried by implied or express consent, meaning that Appellant did not waive that defense. "When issues not raised by the pleadings are tried by [the] express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67. This rule "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999,

10

pet. denied) (quoting *Libhart v. Copeland*, 949 S.W.2d 783, 797 (Tex. App.—Waco 1997, no writ) (trial by consent limited to those exceptional cases where the parties "clearly" tried unpleaded issue)). To determine whether an issue was tried by consent, the trial court examines the record not for evidence of the issue, but rather for evidence of trial of the issue. *Libhart*, 949 S.W.2d at 797. The trial court has broad discretion in determining whether an unpleaded issue was tried by consent. *See Whatley v. City of Dallas*, 758 S.W.2d 301, 306 (Tex. App.—Dallas 1988, writ denied). But although that discretion is to be exercised liberally in favor of justice, trial by consent is the exception, not the rule, and should not be allowed in doubtful cases. *Id.*

Carefully reviewing the record, we do not see that evidence of verbal agreements was objected to based on the statute of frauds, that the parties or the trial court argued the matter in any depth, or that this affirmative defense was tried by consent. In support of the trial court's judgment, it would not be an abuse of discretion for that court to have made its rulings based on Appellant's waiver of the statute of frauds affirmative defense. If we assume, however, without deciding, that the statute of frauds was tried by express or implied consent, meaning that Appellant has not waived the right to assert this issue on appeal, we believe that Appellant has not met the burden of establishing that the statute of frauds applies to this contract. *See Dynegy*, 422 S.W.3d at 641.

Appellant asserts that the statute of frauds applies based on a reading of Texas's version of the Uniform Commercial Code's (UCC) statute of frauds as set forth in Section 2.201 of the Texas Business and Commerce Code. Bus. & Com. § 2.201. Section 2.201 states, in pertinent part:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way

11

of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

*Id.* § 2.201(a).

To determine whether the statute of frauds applies, we must ask whether the contract is a contract for the sale of goods or for services. *See Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Under the UCC, goods are defined as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale." BUS. & COM. § 2.105(a). A "sale" consists of "the passing of title from the seller to the buyer for a price," and a "contract for sale" includes a contract to sell goods in the future. *Id.* § 2.106(a). "Where a contract contains a mix of goods and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *See Tarrant Cty. Hosp. Dist. v. GE Automation Serv., Inc.*, 156 S.W.3d 885, 893 (Tex. App.—Fort Worth 2005, no pet.); *Cont'l Casing*, 38 S.W.3d at 787; *see also, e.g.*, *WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 197 (Tex. App.—Austin 1992, no writ). Thus, to determine whether the UCC's statute of frauds applies here, we must determine whether the dominant factor or essence of the agreement was a "contract for the sale of goods." *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 819 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Cont'l Casing*, 38 S.W.3d at 787).

Appellant asserts that this contract was a contract for the sale of goods in that it required Appellant to furnish palm trees, plants, shrubs, landscaping pavers, irrigation equipment, pumps, pool pumps, saltwater chlorine system, rocks, pipes, rebar, concrete, and plaster, in addition to the service of digging a pool. Appellant argues that the only payments due for "services" were the $8,800 for excavation,

12

$8,800 prior to gunite, and the $17,600 upon completion of gunite. Accordingly, Appellant contends that only $35,200, out of a $90,500 total contract price,[1] was for services. Therefore, Appellant's claim is that the preponderance of the total contract price was for goods, not services, and that the contract is therefore governed by Section 2.201. *See Cont'l Casing*, 38 S.W.3d at 787–88. We disagree with Appellant's calculations and characterization of this contract.

In the logic of Appellant, we believe that Meneses is correct in asserting that the $17,600 due upon contract signing and the $8,800 due upon completion, totaling $26,400, cannot be construed as constituting payment for goods but, rather, should be considered as part of the payment for the service of constructing the pool. When added to the $35,200 conceded by Appellant as payment for services, the total amount due for "services" in this contract equals $61,600 of the total $90,500. We are not persuaded that just because goods are involved that we must parcel them out into percentages and weigh them against the cost for services in determining the application of the statute of frauds to this contract. Obviously, the point of the contract is not merely to dig a hole to be filled with water. The preponderance or "essence" of this contract is for the *service* of installing a swimming pool, with related accoutrements enhancing its use and esthetics. *See Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 902 (5th Cir. 2004) (stating that a contract to construct or install a swimming pool is a hybrid contract deemed to be predominantly for services).

We note that, although this contract consists of tens of thousands of dollars' worth of "goods," simply purchasing the goods would not satisfy the terms of the contract. The contract between the parties was for the construction and installation

---

[1]This amount equals the $88,000 base contract price plus an additional $2,500 for Diamond Brite plaster additive.

13

of a swimming pool. Services must be furnished to produce the functional and esthetic end result, without which, the goods would be of diminished use to a homeowner. Unless the goods were arranged and installed to create the pool and surrounding landscape, the wisdom of a contract for the construction of the pool would have been doubtful. Therefore, we believe the essence of the contract was for the service of installing and building a swimming pool, and the goods necessary to do so were incidental. Accordingly, we overrule Appellant's second issue and hold that the record contains ample evidence of probative value to support the inapplicability of the statute of frauds to this contract.

The same analysis of the statute of frauds applies to Appellant's tenth asserted issue. Appellant asserts that because the statute of frauds is applicable, the trial court erred in finding that the parties amended the contract to delete the additional charge for Diamond Brite Quartz. Appellant asserts that, per the statute of frauds and Section 2.209, any amendment or modification to this contract was required to be in writing. *See* BUS. & COM. § 2.209(c).

In the original contract, an "Option 1" line item was included for Quartz Plaster/Diamond Brite at a price of $2,500. This option was on the table for Meneses's consideration, and it is undisputed that Meneses opted to go with the Midnight Blue Diamond Brite Quartz. However, Meneses contends that there was a subsequent agreement between he and Appellant that, as a result of Meneses referring Rodney Foster as a customer to Appellant, payment for the Diamond Brite Quartz option listed in the contract would be waived.

Appellant asserts that this agreement, if it existed, was not in writing and therefore is barred from the contract per the statute of frauds. The trial court's implied finding that the statute of frauds was inapplicable, this being a contract for services, meant that any modification made to the parties' agreement was not

14

required to be in writing. The trial court could have reasonably concluded that there was a valid oral agreement and that modification by the parties to the contract had excluded the charges for the Diamond Brite Quartz. Accordingly, we overrule Appellant's tenth issue.

## *Issues Three and Four*

Appellant asserts in its third issue that a finding that the payment schedule was orally amended was against the great weight and preponderance of the evidence. Similarly, Appellant's fourth asserted issue contends that the trial court's implied finding that the parties orally amended the payment schedule was legally insufficient to support the judgment.

## *Standard of Review*

Whether there is a meeting of the minds is a question of fact. *Franco v. Ysleta Indep. Sch. Dist.*, 346 S.W.3d 605, 608 (Tex. App.—El Paso 2009, no pet.). Whether an agreement is legally enforceable is a question of law. *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

## *Analysis*

In its argument, Appellant continues to rely upon the statute of frauds in support of its third and fourth asserted issues. However, as discussed above, the affirmative defense of the statute of frauds may not be applied in this matter. Because the statute of frauds is inapplicable, any assertion that modifications or amendments to the contract must have been made in writing is not sustainable. Therefore, we do not discuss the statute of frauds further with regard to these issues.

Continuing to argue its third issue, Appellant asserts that the trial court erroneously held that there was evidence of a "meeting of the minds" or an agreement between the parties to change the written payment schedule. Meneses contends that there was a meeting of the minds when the original contract was

signed, and he does not assert that any modification or amendment to the contract ever occurred. Appellant contends that, even if Meneses was under the impression that there was an agreement between the parties requiring that Appellant notify Meneses when payment was due, Appellant never agreed to do so.

A "meeting of the minds" refers to the parties' mutual understanding of and assent to the subject matter and essential terms of the agreement. *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). A meeting of the minds is necessary to form a binding contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

Whether the parties had a meeting of the minds is an objective determination based upon the parties' statements and actions, not their subjective state of mind. *Franco*, 346 S.W.3d at 608. The parties' conduct and course of dealings are also factors for the trier of fact to weigh in determining whether mutual assent occurred. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). Therefore, we must view the evidence in the light most favorable to the judgment to determine whether, based on the evidence, a "reasonable and fair-minded" finder of fact could have concluded that there was a meeting of the minds that Appellant would notify Meneses when payment was due.

Bradley Scott Taylor stated during trial that, in lieu of sending an invoice to request payment due, he would sometimes call the client to say that payment was needed for portions of the contract, such as the gunite. Additionally, Appellant's foreman and expert witness in this case, Eddie Robison, testified that "the way it works in the construction business" is for the client to be invoiced or called when

16

payment is due. Consistent with that custom or practice, Meneses testified that he only knew when to pay Appellant when contacted by Appellant requesting payment. Meneses testified that he paid every time that he was so notified, at least until the final invoice was sent in 2013.

Therefore, based on the record before us, we hold that the trial court could have reasonably concluded, as the trier of fact, that the actions, conduct, and general business custom and practice and/or course of dealing between the parties evidenced a "meeting of the minds" that Appellant would contact Meneses when each phase of the job had concluded and the next payment was due. A meeting of the minds between the parties could have reasonably been determined to occur when the original contract was signed, thereby negating Appellant's contention that Meneses's actions were contrary to the contractual agreements.

The evidence supports a conclusion that a meeting of the minds occurred. The issue was contested and was resolved, as an issue of fact, by the trial court in favor of Meneses. The trial court impliedly found that the parties agreed to the practice of Appellant requesting the next payment when it was due from Meneses. Such a finding is supported objectively by the parties' actions and the circumstances at the time. The evidence in support of the implied finding is not so weak or against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Accordingly, we overrule Appellant's third and fourth issues.

*Issues Five, Six, Seven, Eight, and Nine*

Appellant briefed issues five through nine together, asserting that the trial court was incorrect in determining that Meneses did not materially breach the contract and that Meneses was entitled to damages. Appellant argues that the trial court's implied finding is both legally and factually insufficient.

17

*Standard of Review*

The materiality of a breach—the question of whether a party's breach of contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact. *See Cont'l Dredging, Inc. v. De–Kaizered, Inc.*, 120 S.W.3d 380, 394–95 (Tex. App.—Texarkana 2003, pet. denied). Like other issues of fact, materiality may be decided as a matter of law only if the finder of fact could reach only one verdict. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432 (Tex. 2017) (citing *City of Keller*, 168 S.W.3d at 822).

*Analysis*

A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied). A material breach by one party to a contract can excuse the other party from obligation to perform. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").

There are five factors that must be considered to determine if a failure to perform is material: (1) whether the injured party fails to receive the benefit of the bargain; (2) whether the injured party can be compensated for the benefit deprived; (3) whether the injured party will suffer a forfeiture; (4) whether the party that failed to perform can cure; and (5) whether the party that failed to perform acted in good faith and fair dealing. *Id.* at 199. Appellant's brief discusses the five factors but gives very little substance as to how each of the factors weighs in favor of Meneses committing a material breach.

18

While Appellant references the trial court's "draft" findings throughout its brief, as we have previously held, these are not valid findings of fact and conclusions of law. Interestingly, factors (1) through (3) are those that appear to have been weighed in the trial court's judgment. The judgment appears to credit Appellant with the outstanding amount of $19,705 that it claimed it was contractually owed, against the $35,300 that Meneses claimed was necessary to repair Appellant's faulty work, resulting in a judgment of $15,595. How the trial court as the finder of fact actually arrived at the economic damages figure is unknown, but the math works out. The trial court also appears to have taken into account Appellant's lack of quality in the delivered services as a breach of contract—for which, offset economic damages and attorney's fees were awarded.

Furthermore, the record contains support for factor (5) above and Meneses's contention that he acted in good faith in this case. Meneses testified that he knew when to pay Appellant based on when Appellant would contact him requesting payment. Meneses made every payment requested until the final invoice was sent in 2013, which was not paid due to alleged deficiencies in Appellant's construction performance. Meneses testified at length as to Appellant's inadequate work and the fact that no proper remedies were initiated to resolve the issues, ultimately resulting in Meneses and his family's inability to enjoy the project.

As previously noted, Meneses hired an expert to assess the cost required to fix all of Appellant's faulty construction work. Russell Sullivan, Meneses's expert, proved Meneses's damages with respect to the cost of the needed repairs, and his assessment of the damages was admitted into evidence. Meneses also testified that he had reason to believe that Appellant had abandoned the job during a lengthy period of time without word, repair, or remediation. Appellant's demand for the final payment was not issued until 2015. While not final, the trial court made "draft"

19

findings that Meneses acted in good faith and suffered considerable damages exceeding any amount that Appellant would have been owed had Appellant properly performed his work under the contract. Based on the record and evidence in support of the judgment before us, the trial court was justified in the implied finding that any breach by Meneses was immaterial.

Generally, when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline*, 134 S.W.3d at 196. The nonbreaching party must elect between two courses of action: either continuing performance or ceasing performance. *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 887–88 (Tex. App.— San Antonio 1996, writ denied) (op. on reh'g) (citing *W. Irrigation Co. v. Reeves Cty. Land Co.*, 233 S.W.2d 599, 602 (Tex. App.—El Paso 1950, no writ)). If the nonbreaching party elects to treat the contract as continuing and insists the party in default continue performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default, and the contract continues in force for the benefit of both parties. *Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.*, No. 05-98-01352-CV, 2001 WL 200144, at *5 (Tex. App.— Dallas Mar. 1, 2001, pet. denied) (mem. op.).

We view the evidence in the light most favorable to the judgment and will uphold the judgment if it is supported by any possible legal theory. *Whorton*, 742 S.W.2d at 278. Here, the trial court impliedly found that Meneses did not materially breach the contract, and we hold that there is ample evidence in the record to support such a finding. Under the circumstances, the lack of a material breach by Meneses is a conclusion that is not against the great weight and preponderance of the evidence.

*Issue Eleven*

Appellant asserts in its eleventh issue that the trial court erred legally and factually in finding that Meneses withheld payment in good faith and that he was entitled to withhold payment due to a dispute concerning the quality of work performed by Appellant. Appellant's argument relates to the $8,800 "due prior to gunite," as reflected in the original contract, as well as the total unpaid amount listed in the final invoice.

*Analysis*

Section 28.002 of the Texas Property Code states that if an owner receives a written payment request from a contractor for an amount owed to the contractor under the contract for properly performed work, the owner shall pay the amount to the contractor, less any amount withheld as authorized by statute, namely Section 28.003. TEX. PROP. CODE ANN. §§ 28.002–.003 (West 2014). This is often referred to as the "Prompt Payment Act." *See, e.g.*, *Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 150 (Tex. 2015); *Hsu v. Conterra Servs., LLC*, No. 01-20-00182-CV, 2021 WL 921672, at *1 (Tex. App.—Houston [1st Dist.] Mar. 11, 2021, no pet.).

The plain language of Section 28.003 indicates that its purpose is to protect a party from being forced to make payment under a contract when there is a good faith dispute regarding the amount owed. PROP. § 28.003. Said disputes include, but are not limited to, issues regarding work performance. *Id.*; *RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 646 (Tex. App.—Amarillo 2006, no pet.). Section 28.003 provides that:

> [I]f a good faith dispute exists concerning the amount owed for a payment requested or required by [Section 28.002] under a contract for improvements to a single-family residence . . . , the owner . . . that is disputing its obligation to pay or the amount of payment may withhold

from the payment owed not more than 110 percent of the difference between the amount the obligee claims is due and the amount the obligor claims is due. *A good faith dispute includes a dispute regarding whether work was performed in a proper manner*.

PROP. § 28.003(a) (emphasis added).

Appellant claims that the trial court's ruling was both legally and factually insufficient. However, we must view the ruling in the light most favorable to the judgment. *City of Keller*, 168 S.W.3d at 802.

Appellant asserts that the trial court was incorrect in the determination that Meneses withheld payment in good faith because Meneses could not have known how much, if anything, he could withhold for the period of time leading up to Sullivan's review of the construction site and determination of the necessary cost to repair any inadequate construction. Appellant argues that, until receiving this information, Meneses was simply withholding *everything* Appellant was owed, regardless of what needed to be repaired.

However, Meneses contends that he acted in good faith in withholding payment from Appellant. He notes that Robison, Appellant's foreman, testified that many of the deficiencies complained of by Meneses would render the job incomplete if true, including the planting of palm trees with plastic wrapped around the root balls, the incomplete tile and plaster work on the pool, the inoperable fire pit, unlevel pavers causing flooding on the back porch, the lack of sufficient pool returns to properly clean the pool, loose rocks, and concrete-stained pavers. Robison further testified that these deficiencies would severely damper the Meneses family's ability to use and enjoy the pool and surrounding landscape. Meneses testified as to all inadequacies of the project and the ways in which those inadequacies affected the use and enjoyment of the pool and surrounding area.

22

Meneses asserted that he knew when to pay Appellant based on when Appellant would contact him and said that he did pay each and every time requested until the final invoice was sent in 2013. Appellant testified that he either invoiced or called customers when payments became due. Appellant also admitted to continuing work on the pool into 2014 after Meneses failed to make the "prior to gunite" payment. Robison testified that it is customary in the construction business for a customer to be invoiced or called when payment is due and that that is generally how Appellant sought payment.

Meneses hired a private appraiser to determine the total cost to remedy the inadequate construction done by Appellant. Russell Sullivan, an experienced builder and supervisor of pool construction, testified that the damages to repair the faulty work performed by Appellant would cost in excess of $35,000. Meneses testified that Appellant installed a used, rusty fire pit; caused muddy water to run into the pool; installed approximately 1,500 square feet of uneven pavers; installed rocks that were loose and would fall off; improperly installed tile in the pool; did not seal the pool; and caused water to pool on his back porch through the improper installation of sloped pavers and that, regardless of Meneses's complaints, Appellant never fixed the aforementioned issues. Meneses also testified that he believed Appellant to have abandoned the project from June 30, 2014, through September 11, 2015, when Meneses received a letter from Appellant's counsel demanding payment.

The Prompt Pay Act states that a *request* for payment must be made by the contractor to the owner for *properly performed work*. PROP. §§ 28.002–.003. We hold that the record supports Meneses's contention that he withheld payment because of improper performance by Appellant. In light of the final judgment entered by the trial court, the amount withheld by Meneses was impliedly justified. The trial court could have properly found that Meneses was entitled to withhold

23

payment due to a good-faith dispute based on faulty construction, and we rely on the trial court's determination of the total amount in controversy. The record indicates that the amount owed to Appellant at the time of the final invoice was roughly $20,000. The record also indicates that it would cost in excess of $35,000 to repair the faulty construction work. Therefore, it was reasonable that the trial court found that Meneses did not withhold more than 110% of the amount owed to Appellant and that he, therefore, complied with the Prompt Pay Act. *See id.* § 28.003. The trial court's finding regarding this issue was not manifestly unjust and is supported by the evidence in the record. Accordingly, we overrule Appellant's eleventh issue.

*Issues Twelve, Thirteen, and Fourteen*

Appellant briefed issues twelve, thirteen, and fourteen together. In these three issues, Appellant asserts that the trial court erred in finding that Appellant failed to substantially comply with the contract.

*Analysis*

Our analysis of these issues requires us to examine all of the evidence and make a determination as to whether the evidence in support of the finding is so weak as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. As the trier of fact in a bench trial, it is the province of the trial court to determine the credibility of the witnesses and the weight to be given to their testimony, to believe or disbelieve all or any part of the testimony, and to resolve any inconsistencies in the testimony. *Robbins v. Roberts*, 833 S.W.2d 619, 624 (Tex. App.—Amarillo 1992, no writ.). When there is conflicting evidence, the appellate court usually regards the finding of the trier of fact as conclusive. *See Jauregui v. Jones*, 695 S.W.2d 258, 263 (Tex. App.—San Antonio 1985, writ ref'd n.r.e). We are not to reweigh the evidence and set aside the finding merely because we are of the opinion that a different result may be more reasonable. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

24

In a contract action based upon substantial performance, the party seeking relief under the doctrine bears the burden of proving that he did substantially perform in accordance with the agreement. *Patel v. Ambassador Drycleaning Co.*, 86 S.W.3d 304, 307 (Tex. App.—Eastland 2002, no pet.). Therefore, Appellant bore the burden of proving that it substantially performed under the contract. When a contractor has substantially performed a building contract, he is entitled to recover the full contract price less the cost of remedying those defects that are remediable. *Atkinson v. Jackson Bros.*, 270 S.W. 848, 850 (Tex. Comm'n App. 1925, holding approved).

Both expert witnesses in this case testified that numerous problems persisted throughout Appellant's work pursuant to the contract. Robison testified that many of the deficiencies complained of by Meneses rendered the job incomplete if true, including improper planting of the palm trees, incomplete tile and plaster work in the pool, inoperable equipment and accessories, uneven pavers causing flooding on the back porch, loose rocks and fixtures, and concrete-stained pavers. Robison further testified that these inadequacies would prevent Meneses and his family from properly enjoying the project upon completion. Sullivan testified that certain details, such as the pavers, dead palm trees, and inoperable fire pit, among others, would have needed to be fixed or replaced. To then abandon the project for a substantial period followed by Appellant's lawsuit seeking the full payment without resolving the construction issues is conduct that the trial court would not ignore.

We hold that there is sufficient evidence in the record to support the trial court's implied determination that Appellant failed to substantially comply with the terms of the contract. The trial court impliedly found that the costs of repairing Appellant's deficient work was more than $35,000 and that Meneses had not been able to enjoy the pool and surrounding area as a result of the inadequate installation of the pool. As previously discussed in this opinion, the trial court's implicit finding

that Meneses did not materially breach the contract is supported by the evidence and the law.

Regarding Appellant's fourteenth issue, Appellant asserts that attorney's fees were uncontested. To the contrary, Meneses contends that attorney's fees were contested. The parties filed competing claims for breach of contract and entitlement to attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code. A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it acts without reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Worford*, 801 S.W.2d at 109. In conducting an abuse of discretion review, an appellate court views the evidence in the light most favorable to the trial court's ruling and indulges every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Viewing the evidence in support of the judgment, we hold that the trial court did not abuse its discretion in finding that it was Appellant that materially breached the contract and that Meneses therefore, under Chapter 38, was entitled to attorney's fees.

Generally, determining whether to award attorney's fees is a question committed to the trial court's sound discretion because of the nature of the issue. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161–62 (Tex. 2004). Whether it is equitable and just to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Id.* at 162; *see Approach Res. I, L.P. v. Clayton*, 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.). As was the case in *Ridge Oil*, there is no indication in the record that the trial court's decision to not award attorney's fees to Appellant, in view of competing claims of material breach resolved in favor of Meneses, was arbitrary or unreasonable. Accordingly, the trial court did not abuse its discretion.

Additionally, Appellant argues that it is entitled to prejudgment interest under the Prompt Payment Act. *See* PROP. § 28.004. Under the Prompt Payment Act, if an owner or an owner's agent does not pay a contractor within thirty-five days of the contractor's written request for payment *of an amount that is allowed to the contractor* under a construction contract, the contractor is entitled to prejudgment interest at the rate of 1.5% each month. *See id.* §§ 28.002, .004. Under the terms of the Prompt Payment Act, Appellant argues that it is entitled to prejudgment interest. In response, Meneses argues that Appellant was not entitled to prejudgment interest under the Prompt Payment Act because there was a good faith dispute about Appellant's performance under the contract.

Appellant cites *Patel v. Creation Construction, Inc.* and *Landmark Organization, L.P. v. Delphini Construction Co.* for the proposition that Appellant is entitled to prompt pay interest under Section 28.004. *See Patel v. Creation Constr., Inc.*, No. 05-11-00759-CV, 2013 WL 1277874, at *3–4 (Tex. App.—Dallas Feb. 27, 2013, no pet.) (mem. op.); *Landmark Org., L.P. v. Delphini Constr. Co.*, No. 13-04-00371-CV, 2005 WL 2560022, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 13, 2005, pet. denied) (mem. op.). However, *Patel*, which cites *Landmark*, states that "while section 28.003 allows a party to withhold prompt payment in the event of a good faith dispute, it does not exempt this withheld amount from accruing interest *if the withholding party is ultimately found to be at fault for the breach.*" *Patel*, 2013 WL 1277874, at *3 (emphasis added) (quoting *Landmark*, 2005 WL 2560022, at *5). Therefore, these cases are inapplicable because the withholding party in this case, Meneses, was not found to be at fault for the breach. Accordingly, Appellant is not entitled to recover prompt pay interest, and the trial court did not err in refusing to award same.

We overrule Appellant's twelfth, thirteenth, and fourteenth issues.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

September 16, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.